UNITED STATES, Appellant

v.

GEORGE HUSTON HERNDON, Lieutenant (junior grade), U. S. Navy, Appellee

1 USCMA 461, 4 CMR 53

No. 570

Decided July 17, 1952

CDR. Malcom J. Bradbury, USNR, for Appellant.
LCDR. Robert H. McCarthy, USNR, for Appellee.

Opinion of the Court

PAUL W. BROSMAN, Judge:

The accused in this case, Lieutenant (junior grade) George H. Herndon, United States Navy, was tried by gen-

eral court-martial[1] at Yokosuka, Japan, on October 22, 23, and 24, 1951, under charges alleging larceny of coffee, the property of the United States, in violation of the Uniform Code of Military Justice, Article 121, 50 USC § 715; unlawful receipt of the same coffee knowing it to have been stolen, in violation of the Uniform Code of Military Justice, Article 134, 50 USC § 728; and violation of a general regulation prohibiting the possession of articles, goods, or merchandise in excess of demonstrable personal needs, in violation of the Uniform Code of Military Justice, Article 92, 50 USC § 686. He was found not guilty of the first offense, but guilty of the remaining two, and sentenced to dismissal and to a forfeiture of $100 per month for five months. The convening authority approved but a board of review in the office of The Judge Advocate General, United States Navy, held invalid the proceedings and findings as to the specification and charge alleging receipt of stolen goods for failure to allege an offense. The board of review further set aside the findings of guilty as to the specification and charge alleging the violation of a general order on the ground that the evidence was insufficient to sustain them. Thus the effect of the action of the board was to set aside all findings of guilty and the sentence.

The case is before us on certificate of The Judge Advocate General, United States Navy, pursuant to the provisions of the Uniform Code of Military Justice, Article 67(b)(2), 50 USC § 654, raising the following question:

"Does the specification laid under charge II properly allege a violation of Article 134, Uniform Code of Military Justice?"

Although we do not regard ourselves as limited to the issues specified by a service Judge Advocate General under the terms of Article 67(b) (2), supra, in view of the state of the record in the case at bar, we shall concern ourselves only with the language of the specification of the charge alleging the offense of receiving stolen goods. However, it

is necessary that a brief report of the facts be made.

Summarizing the evidence, it appears that on or about July 23, 1951, a conversation took place among three persons in the office they occupied jointly. These men were the accused, Herndon; Ward E. Anderson, communications technician, third class; and Wayne A. Morrill, communications technician, third class. The discussion centered on the price that coffee was bringing "on the beach." At that time the accused stated in substance that if Anderson could secure coffee, he, Herndon, would be able to remove it from the station without difficulty for the reason that only rarely is an officer's automobile searched at the gate of a military installation. Thereafter Anderson, through illicit personal contacts and wholly without authority, obtained from the base galley 200 pounds of coffee boxed in five cardboard cartons, each containing 40 pounds of the product. Anderson arranged to have the coffee placed in the luggage compartment of the accused's automobile, furnished by the latter for the purpose. The accused then joined Anderson and the two men prepared to depart from the base. However, a Marine Corps corporal observed the loading of the automobile, became suspicious, and furnished the gate sentry with a description of the vehicle. When the accused approached the gate his car was halted and a search disclosed the presence of the stolen coffee. Although Herndon sought immediately to return his automobile to his quarters on the station, he was detained by the sentry until the arrival of the officer of the day. On arrival of this officer he inquired of the accused where he planned to take the coffee—to which the latter replied spontaneously, "I was going to take it out to sell it." The officer of the day then inquired where the coffee was to be sold, and the accused replied, "I don't know; I am kind of new at this stuff." Later during the informal investigation, and after having been duly advised of his rights, Herndon stated that the coffee had been removed "from the galley," that he planned to sell it, but that he did not at the time know where

---

[1] 6–52–G–311

he would be able to dispose of it. Subsequently at the trial the accused testified under oath, in explanation of his earlier conduct, that he suspected Anderson of having placed the coffee in his automobile, and that all of his earlier statements concerning the matter were made in an attempt to protect Anderson —that is, to afford him an opportunity to explain the situation to the accused and to the proper authorities.

The specification under Charge II of a violation of the Uniform Code of Military Justice, Article 134, supra, is set out below verbatim:

"In that George H. Herndon, lieutenant, junior grade, U. S. Navy, Naval Communication Facility, Fleet Activities, Yokosuka, Japan, did, at said station, on or about 23 July 1951, unlawfully receive about two hundred (200) pounds of coffee, of a value of about $140.00, the property of the United States Government, which property, as he, the said Herndon, then well knew, had been stolen."

The Manual for Courts-Martial, United States, 1951, Appendix 6c, page 494, contains the following sample specification, enumerated 169:

"In that — did, (at) (on board) —, on or about — 19 —, unlawfully (receive) (buy) (conceal) —, of a value of about $—, the property of —, which property, as he, the said —, then well knew, had been stolen."

It will be observed that in form the specification in question in this case follows identically that of sample specification 169 set out above. The board of review was of opinion that this specification was intended to allege a violation of 18 USC § 641, which provides in pertinent part that:

"Whoever receives, conceals, or retains the same [stolen property of the United States] *with intent to convert it to his use or gain,* knowing it to have been embezzled, stolen, purloined or converted . . . ."
[Emphasis supplied]

Since the present specification failed to include the phrase "with intent to convert it to his use or gain," as re-

quired by the language of 18 USC § 641, the board of review regarded it as fatally defective and held invalid the proceedings and findings relating thereto.

If the specification be regarded as alleging only a violation of Title 18, supra, it would indeed be fatally defective for failure to set out the required specific intent to convert. This is conceded freely by appellate Government counsel in the case. However, there is no showing whatever in the record— or elsewhere, for that matter—that it was the intention of the pleader to allege a violation of any provision of the United States Code. In fact, the internal evidence would seem to point in an opposite direction. The instant specification is laid under Article 134, supra. Certainly no reference is made in the specification to the offense denounced in 18 USC § 641—although we do not here pass on the necessity for specifically pleading a section of the United States Code when a charge is in point of fact based directly thereon. In addition, the specification's context follows verbatim sample specification 169, which as set out above differs materially as to elements from the phrasing of the pertinent provision of the United States Code. Accepting fully the board of review's position as regards imperfection in the specification as an attempt to charge the offense defined in Section 641, supra, its decision serves to eliminate only one of three alternative offense theories offered by Article 134, supra. The terms of this Article are set out below in full:

"Though not specifically mentioned in this code, all *disorders and neglects to the prejudice of good order and discipline* in the armed forces, all *conduct of a nature to bring discredit upon the armed forces,* and *crimes and offenses not capital,* of which persons subject to this code may be guilty, shall be taken cognizance of by a general or special or summary court-martial, according to the nature and degree of the offense, and punished at the discretion of such court."
[Emphasis supplied]

It is to be observed that crimes denounced by this Article may fall within

one or more of three broad categories: (a) disorders and neglects to the prejudice of good order and discipline, (b) conduct of a nature to bring discredit upon the armed forces, and (c) crimes and offenses not capital of which persons subject to the Uniform Code of Military Justice, 50 USC §§ 551–736, may be guilty. The third of these categories has been described in the Manual for Courts-Martial, supra, paragraph 213c, page 383, as follows:

"Crimes and offenses not capital which are referred to and made punishable by Article 134 include those acts or omissions, not made punishable by another article, which are denounced as crimes or offenses by enactments of Congress or under authority of Congress and made triable in the Federal civil courts."

While the board of review in its decision successfully eliminated (c) above, so far as the present case █ is concerned, it touched upon neither (a) nor (b). The question arises, therefore, whether the action of a member of the armed forces in receiving stolen property of the United States unlawfully, and with knowledge of its character, may constitute either a disorder or neglect to the prejudice of good order and discipline, or conduct of a nature to bring discredit on the armed forces. We believe that such action may constitute an offense under Article 134, supra, regardless of the presence of an intent to "convert it to his use or gain"—and we entertain no doubt whatever in the matter. The mentioned Article has recently been the subject of consideration by us in two cases, and we refer to them here as a source of our general views in the area. See United States v. Marker, (No. 281), 1 USCMA 393, 3 CMR 127, decided May 19, 1952, and United States v. Snyder, (No 409), 1 USCMA 423, 4 CMR 15, decided June 5, 1952. The "discredit" and "disorders and neglects" categories have been used, we believe, confusingly, and at times interchangeably, by the services. However, in view of the fact that the accused's misconduct in this case transpired in the semi-privacy of a military reservation—and without foreclosing ourselves in the matter—we

shall concern ourselves only with (a) above. See United States v. Snyder, supra. In discussing "disorders and neglects" Winthrop, Military Law and Precedents, 2d ed, 1920 Reprint, page 722, says:

"In this comprehensive term are included all such insubordination; disrespectful or insulting language or behaviour towards superiors or inferiors in rank; violence; immorality; dishonesty; fraud or falsification; drunken, turbulent, wanton, mutinous, or irregular conduct; violation of standing orders, regulations, or instructions; neglect or evasion of official or routine duty, or failure to fully or properly perform it;—in fine all such 'sins of commission or omission,' on the part either of officers or soldiers as, on the one hand, do not fall within the category of the 'crimes' previously designated, and, on the other hand, are not expressly made punishable in any of the other ('foregoing') *specific* Articles of the code, *while yet being clearly prejudicial to good order and military discipline.*"

Given the demands of good order and military discipline, and the objectives of Article 134, supra, and its various precursors in the Articles of War, 10 USC §§ 1472–1593, we are quite certain that the conduct of the accused, as specified in the present case, constitutes an offense under military law through the "general" Article. Indeed this has long been recognized. See Dig Op JAG Army, 1912–40, § 454(74), (75), pages 361, 362. Moreover, assuming that the evidence in the instant case establishes the presence of an intent on the part of the accused to convert the coffee to his own "use or gain," we █ are unable to accept the view of appellate defense counsel—if, in fact it is his position— that if a certain act of misconduct *may* be charged as a "crime or offense not capital," then the charge *must* be so laid.

The charge and specification here clearly advised the accused █ that he was being tried for an amply specified violation of the Uniform Code of Military

Justice, Article 134, the "general" Article. The court-martial, in finding him guilty thereof, could well have determined, and doubtless did, that his actions, as alleged in the specification under scrutiny, constituted—in the language of Winthrop quoted above—either immorality, dishonesty, fraud, falsification, or irregular conduct, or all of them, and hence a disorder prejudicial to good order and discipline. Certainly we cannot find otherwise as a matter of law.

It is, therefore, our view that the specification of Charge II herein is not fatally defective, but instead alleges properly an offense under Article 134, supra. So holding, we reply in the affirmative to the question certified by The Judge Advocate General, United States Navy. The record of trial is returned to him for action not inconsistent with this opinion.

Chief Judge QUINN and Judge LATIMER concur.