UNITED STATES of America

v.

James N. FOSLER, Lance Corporal (E–3), U.S. Marine Corps.

NMCCA 201000134.

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 21 Sept. 2009.

28 Oct. 2010.

For Appellant: Maj Jeffrey Liebenguth, USMC.

For Appellee: Maj Jonathan Nelson, USMC.

Before REISMEIER, MITCHELL, BEAL, Appellate Military Judges.

**PUBLISHED OPINION OF THE COURT**

REISMEIER, Chief Judge:

A panel of members with enlisted representation sitting as a general court-martial convicted the appellant, contrary to his pleas, of adultery in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. The appellant was sentenced to 30 days confinement, reduction in pay grade to E–1, total forfeitures, and a bad-conduct discharge. The convening authority approved the sentence as adjudged.

The appellant contends that the specification for which he was convicted fails to state an offense because it does not expressly allege the terminal element of Article 134, UCMJ. We find the Government is not required to expressly allege the terminal element for an Article 134, UCMJ, offense, and affirm the findings and sentence.

## I. BACKGROUND

The specification under Charge II alleging adultery in violation of Article 134, UCMJ was set forth as follows:

In that Lance Corporal James N. Fosler, U.S. Marine Corps, Marine Corps Security Force Regiment, on active duty, a married man, did, at or near Naval Station, Rota, Spain, on or about 26 December 2007, by wrongfully having sexual intercourse with [Ms. K], a woman not his wife.

The evidence in the record of trial supporting the adultery conviction is clear. The appellant was a drill instructor (DI) at the Naval Junior Reserve Officer Training Corps (NJROTC) in Rota, Spain. Record at 844. In two written statements provided to the Naval Criminal Investigative Service, and in his testimony at trial, the appellant admitted to being married and having sexual intercourse on 26 December 2007 with Ms. K, a sixteen-year-old high school student enrolled in NJROTC. Prosecution Exhibits 10 and 12; Record at 841–45, 1461. Ms. K. worked as an assistant drill instructor (ADI) at NJROTC, and the appellant was one of the DIs whom Ms. K assisted. Record at 843–44. Ms. K lived in Rota, Spain because she was the dependent daughter of an active duty Navy servicemember. *Id.* at 840. The appellant, in uniform, met Ms. K at the barracks building on Naval Station, Rota, Spain, and escorted her to the lounge where he engaged in sexual intercourse with her. *Id.* at 902, 1487, 1493. The evidence showed that other DIs and NJROTC students knew the appellant had sexual intercourse with Ms. K. *Id.* at 947, 949, 1143–44, 1615. Ms. K claimed the intercourse was not consensual, but the appellant was ultimately acquitted of rape and aggravated sexual contact (Charge I) under Article 120, UCMJ, 10 U.S.C. § 920.

Other than the evidence supporting the adultery conviction, minimal portions of the record of trial are relevant to the assignment of error. During opening statements, trial defense counsel referred to the adultery charge by acknowledging that Lance Corporal (LCpl) Fosler had sexual intercourse with Ms. K, but then stated, "it takes more for that to run us into a crime . . . ." Record at 825. Trial defense counsel did not make any

pretrial motions consistent with the current assignment of error, but he did make an oral motion under RULE FOR COURTS-MARTIAL 917, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2005 ed.) to dismiss the adultery charge for failure to state an offense, noting that the specification did not allege the terminal element. Record at 1355–57.[1] The military judge denied the motion, and stated that the Government was not required to explicitly allege the terminal element. She further stated, referring to the terminal element, "[t]he government can prove up either of them in this case." *Id.* at 1357. At the conclusion of the trial, the military judge instructed the members as to the elements of adultery:

> In order to find the accused guilty of this offense, you must be convinced, by legal and competent evidence, beyond a reasonable doubt:
>
> First, that . . . the accused wrongfully had sexual intercourse with [Ms. K];
>
> Secondly, that the accused was married to another; and
>
> Thirdly, that under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces, or was of a nature to bring discredit upon the armed forces.
>
> . . . .
>
> Not every act of adultery constitutes an offense under the Uniform Code of Military Justice. To constitute an offense, the government must prove, beyond a reasonable doubt, that the accused's adultery was either directly prejudicial to good order and discipline, or service discrediting.
>
> . . . .
>
> Under some circumstances, adultery may not be prejudicial to good order and discipline, but nevertheless may be service discrediting, as I've explained those terms to you.
>
> Likewise, depending on the circumstances, adultery could be prejudicial to good order

---

1. Trial defense counsel raised a motion pursuant to R.C.M. 917, arguing that there was no evidence that the alleged adultery was prejudicial to good order and discipline or service discrediting. However, he also argued that the specification

failed to state an offense because it failed to allege that the conduct was either prejudicial to good order and discipline or service discrediting. That latter basis is more accurately considered as a motion to dismiss under R.C.M. 907.

and discipline, but not be service discrediting.

*Id.* at 1767–69. Following deliberations, the members returned general findings and found the appellant not guilty of Charge I, but guilty of Charge II, adultery in violation of Article 134, UCMJ. Subsequent to briefs filed by the appellant and the Government, oral argument was ordered and heard on the issue of whether an Article 134 charge fails to state an offense if the terminal element is not expressly alleged in the specification.

## II. ISSUE PRESENTED

Article 134 contains two statutory elements: an accused committed a certain act, and the act was prejudicial to good order and discipline and/or service discrediting. Art. 134, UCMJ, 10 U.S.C. § 934. The appellant argues that the so-called "terminal element" of Article 134 offenses—prejudice to good order and discipline and/or service discredit—must be alleged within the language of the specification where an accused is charged with a violation of Article 134. The question presented is whether concepts of fair notice and the holdings of *Medina*,[2] *Miller*,[3] and *Jones*[4] require a departure from 60 years of precedent established by the Court of Appeals for the Armed Forces[5] regarding the requirements of pleading Article 134 offenses. We conclude that they do not.

## III. PRINCIPLES OF LAW

### a. *Fair Notice of Article 134*

■ In general, fair notice has two key facets. First, the accused must have fair notice his conduct is subject to criminal sanction. *United States v. Saunders*, 59 M.J. 1, 6 (C.A.A.F.2003). Second, the accused must have fair notice of the elements against which he must defend. *Id.* at 9.

With respect to the first facet, traditionally Article 134 has been treated differently from other offenses. In fact, the Supreme Court has recognized the importance of analyzing Article 134 "not in vacuo, but in the context in which the years have placed it." *See Parker v. Levy*, 417 U.S. 733, 752, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974) (quoting *United States v. Frantz*, 2 USCMA 161, 7 C.M.R. 37, 39, 1953 WL 1509 (1953) (internal quotation marks omitted)). In *Parker v. Levy*, the Supreme Court, while upholding the constitutionality of Article 134, confirmed the fundamental principle of deference given to the military. The Court acknowledged "the military constitutes a specialized community governed by a separate discipline from that of the civilian." *Id.* at 744, 94 S.Ct. 2547 (quoting *Orloff v. Willoughby*, 345 U.S. 83, 94, 73 S.Ct. 534, 97 L.Ed. 842 (1953)) (internal quotation marks omitted). "[T]o maintain the discipline essential to perform its mission effectively, the military has developed what 'may not unfitly be called the customary military law' or 'general usage of the military service.'" *Id.* (quoting *Martin v. Mott*, 25 U.S. 19, 12 Wheat. 19, 6 L.Ed. 537 (1827)). For over a century, the Supreme Court has "recognized that the longstanding customs and usages of the services impart accepted meaning to the seemingly imprecise standards of Arts. 133 and 134." *Id.* at 746–47, 94 S.Ct. 2547. The Court further explained that those unique standards are manifested in the Uniform Code of Military Justice:

> Th[e] Code cannot be equated to a civilian criminal code. It, and the various versions of the Articles of War which have preceded it, regulate aspects of the conduct of members of the military which in the civilian sphere are left unregulated. While a civilian criminal code carves out a relatively small segment of potential conduct and declares it criminal, the Uniform Code of Military Justice essays more varied regulation of a much larger segment of the activities of the more tightly knit military community.

*Id.* at 749, 94 S.Ct. 2547. Specifically, Article 134, as enacted, maintains its historical roots with a British article that punished "all Dis-

---

2. *United States v. Medina*, 66 M.J. 21 (C.A.A.F. 2008).

3. *United States v. Miller*, 67 M.J. 385 (C.A.A.F. 2009).

4. *United States v. Jones*, 68 M.J. 465 (C.A.A.F. 2010).

5. Formerly called the Court of Military Appeals.

orders and Neglects," which was later adopted by the Continental Congress in 1775. *Id.* at 745, 94 S.Ct. 2547. Despite numerous reenactments and the 1916 addition of the clause punishing "all conduct of a nature to bring discredit upon the military service," substantially the same language has persevered through the present day. *Id.* at 745–46, 94 S.Ct. 2547 (citations omitted).

Adultery as a violation of Article 134 evolved from non-codal sources. *United States v. McCrae*, 16 M.J. 485, 486 (C.M.A. 1983). However, at least since the 1951, a sample specification for adultery has been included in the Manual for Courts–Martial, United States, and adultery has been listed in the table of maximum punishments as a violation of Article 134. *See* MCM (1951 ed.), ¶ 127(c) and Appendix 6(c). Indeed, at least as early as 1952, adultery was recognized as an offense punishable under Article 134. *See United States v. Butler*, 5 C.M.R. 213, 215, 1952 WL 2116 (A.B.R.1952) ("Although adultery is not specifically denounced as an offense by the Uniform Code of Military Justice, it is mentioned in the Table of Maximum Punishments and the offense is certainly embraced within the purview of Article 134 . . ."). And at least since 1984, it has been included as a specifically listed offense under Article 134 within the MCM. MCM (1984 ed.), Part IV, ¶ 62. We note that the appellant's date of birth is listed as 1987. Defense Exhibit B.

Based upon the foregoing, it is clear that the appellant had fair notice that his conduct was subject to criminal sanction.

■ As to the second aspect of fair notice, a charge under Article 134 "does not necessarily require published notice of the precise wording of the elements." *Saunders*, 59 M.J. at 9 (citing *Parker v. Levy*, 417 U.S. at 745–46, 94 S.Ct. 2547) (referring to the history and language of Article 134). Instead, the specification "must contain words of criminality and provide the accused with notice of the elements of the crime alleged." *Id.* (citing *United States v. Vaughan*, 58 M.J. 29, 35 (C.A.A.F.2003)). In particular, the specifica-

tion must properly set out the conduct that a fact finder could determine was prejudicial to good order and discipline or service discrediting. *Id.* at 10 (citing *Vaughan*, 58 M.J. at 35–36).

As to this second aspect of fair notice, the appellant argues that the specification itself must provide notice of the essential elements, and argues that the recent holding in *Miller*,[6] and by implication, *Medina*[7] and *Jones*,[8] requires us to find that service discredit/prejudicial conduct must be alleged in an Article 134 specification because it is an essential element. Appellant's Brief of 21 May 2010 at 10–13. He asserts that the reach of these holdings has a direct impact on his claim that the Article 134 specification at issue in his trial failed to state an offense because it did not allege the terminal—and thus, an essential—element.

In *Medina*, the Court of Appeals for the Armed Forces addressed notice with regard to Article 134 offenses in the context of lesser included offenses. The holding of *Medina* was not directly on point, however. The court concluded "that clauses 1 and 2 are not necessarily lesser included offenses of offenses alleged under clause 3 . . . ." The court did find that under the principles of fair notice, an accused has the right to know to what offense and under what legal theory he or she is pleading guilty. *Id.* 66 M.J. at 27. The court did not, however, address the question presented in this case.

In *Miller*, again in the context of addressing lesser included offenses, the court ruled that the accused was not on notice of an Article 134 offense as a lesser included offense of Article 95, UCMJ, because the terminal element was not expressly alleged. The court's reasoning was that clauses 1 and 2 of Article 134 are not *per se* included in every enumerated offense. *Id.* Again, the court was not forced to address the question of whether the terminal element had to be pleaded when Article 134 itself is the charged offense.

6. 67 M.J. 385 (C.A.A.F.2009).

7. 66 M.J. 21 (C.A.A.F.2008).

8. 68 M.J. 465 (C.A.A.F.2010).

Finally, in *Jones*, the court turned to the "elements test" for defining lesser included offenses and expressly overruled any prior case law that deviated from that test. *Id.* at 22.[9] Under the elements test, if one offense contains an element not found in the other offense—including the prejudicial to good order and discipline or service discrediting element—the two are separate offenses and thus must be separately charged. *Id.* at 23. Otherwise, conviction of an ostensible lesser included offense violates the constitutional due process principle of fair notice. *Id.* at 23. *See also United States v. McMurrin,* 69 M.J. 591 (N.M.Ct.Crim.App.2010). As with *Medina* and *Miller,* the implications of that holding for charged 134 offenses remained for another day.

**b.  *Stating an Offense***

█  R.C.M. 307(c)(3) provides: "A specification is a plain, concise, and definite statement of the essential facts constituting the offense charged. A specification is sufficient if it alleges every element of the charged offense expressly or by necessary implication." *See United States v. Sutton,* 68 M.J. 455, 455 (C.A.A.F.2010) (pleading must provide notice and protection against double jeopardy) (citations omitted). With respect to Article 134, further guidance has been cataloged in the MCM which states: "[A] specification alleging a violation of Article 134 need not expressly allege that the conduct was 'a disorder or neglect,' [or] that it was 'of a nature to bring discredit upon the armed forces.'"  MCM, Part IV, ¶ 60(c)(6)(a). This guidance is consistent with military justice precedent for stating an offense under Article 134 for more than 60 years. The Court of Appeals for the Armed Forces has held that the terminal element need not be expressly alleged when an Article 134 offense is charged. *See United States v. Marker,* 1 USCMA 393, 3 C.M.R. 127, 134, 1952 WL 1848 (1952) ("we find no reason for the inclusion in the specifications of the words 'conduct of a nature to bring discredit on the military service.'"); *United States v. Sadinsky,* 14 USCMA 563, 34 C.M.R. 343, 346, 1964 WL 5026 (1964) ("such

an allegation need not be made in a specification laid under the General Article"); *United States v. Mayo,* 12 M.J. 286, 293 (C.M.A. 1982) ("The court, however, has not held that a specification lodged under Article 134 must include an allegation [of the terminal element].").

Military justice precedent is more than merely persuasive on the point raised by the appellant. It is directly on point, and contrary to his position. In explaining its holding that the terminal element need not be expressly alleged when an Article 134 offense is charged, the then-Court of Military Appeals stated:

> Fortunately, we are no longer bound by the ancient rigor of pleading at common law.... If the indictment informs the accused of what he must be prepared to meet, and is sufficiently definite to eliminate the danger of future jeopardy, it will be held sufficient....
>
>     ....
>
> ... [W]e find no reason for the inclusion in the specifications of the words "conduct of a nature to bring discredit upon the military service." In truth, we believe the suggested language to be nothing more than traditionally permissible surplusage in specifications laid under Articles of War 96.... Its use therein can add nothing of legal effect to an allegation of conduct not of such a discrediting nature—and its omission detracts not at all from conduct which clearly is.

*Marker,* 3 C.M.R. at 134 (internal citations omitted). This same conclusion was reached by that court again the same year in *United States v. Herndon,* 1 USCMA 461, 4 C.M.R. 53, 1952 WL 2685 (1952).

Referred to as a "short form" of charging Article 134 offenses by the Court of Military Appeals, this "short form" of alleging Article 134 offenses is not simply one in which the President, by way of the MCM, has provided a suggested method of charging Article 134 offenses. "Short form" charging has not evolved exclusively as an executive methodology which has been sanctioned by the judi-

---

9.  When turning to the "elements test," the court in *Jones* was referring to overruling any cases

that deviated from *United States v. Teters,* 37 M.J. 370 (C.A.A.F.1993).

ciary. In point of fact, the "short forms" of Article 134 specifications suggested in the MCM rest upon the judicially-sanctioned charging methodology adopted by the Court of Military Appeals in 1952 in the *Marker/Herndon* cases. It was later incorporated into what was then paragraph 213a of the MCM and has continued in usage into the present.[10]

### c. Standard of Review

Whether a specification states an offense is a question of law that we review *de novo. Sutton*, 68 M.J. at 457. Specifications challenged immediately at trial will be viewed in a more critical light than those which are challenged for the first time on appeal. *United States v. French*, 31 M.J. 57, 59 (C.M.A.1990). Finally, when faced with the prospect of overruling precedent, "[t]he doctrine of *stare decisis* is 'the preferred course because it promotes ... predictable, and consistent development of legal principles ... and contributes to the actual and perceived integrity of the judicial process.'" *United States v. Rorie*, 58 M.J. 399, 406 (C.A.A.F. 2003) (quoting *Payne v. Tennessee*, 501 U.S. 808, 827, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991)).

### IV. DISCUSSION

#### a. Notice of Theories of Liability Under Article 134, UCMJ

■ Clauses 1 and 2 present alternate theories of liability contained in the terminal element.[11] An accused can be found guilty if

the Government proves his conduct meets the criteria of either one or both clauses.[12] Consistent with the holdings of *Medina, Miller*, and *Jones*, an accused is provided notice of these theories of liability when charged with an Article 134 violation. *See Jones*, 68 M.J. at 472 ("Interpreting Article 79, UCMJ, to require the elements test for LIOs has the constitutionally sound consequence of ensuring that *one can determine ex ante—solely from what one is charged with—all that one may need to defend against.*") (emphasis added). This case does not present the same issues as presented where an accused is charged with a separate enumerated offense, or a clause 3 offense under Article 134, and the Government seeks to uphold a conviction of an ostensible lesser included offense which fails to contain the clause 1 and 2 theories of liability.

Nevertheless, the appellant draws upon *Miller* for the proposition that the terminal element is an "essential element" and therefore must be alleged. Appellant's Brief at 11–12. The key distinguishing factor, however, is that in *Miller* the terminal element was "not contained in the textual exposition of Article 95, UCMJ[,]" and thus the accused did not know he had to defend against an Article 134 offense. *Miller*, 67 M.J. at 388. Therefore, *Miller* is specifically analyzed under a framework centered on notice and lesser included offenses; the same is true for *Medina* and *Jones*. All three cases involved the issue of whether the accused received adequate notice of an uncharged Article 134 offense as a lesser included offense of anoth-

---

**10.** The Court of Military Appeals noted its role in the inclusion of the "short form" of charging in the MCM by stating that "the *Marker/Herndon* concept was incorporated into" the MCM subsequent to the court's decisions on this very topic. *Mayo*, 12 M.J. at 293.

**11.** In the context of Article 134, the Court of Appeals for the Armed Forces has used the phrase "alternative theories" in a manner which might suggest either that clauses 1 and 2 are two separate offenses resting on two separate terminal elements, or that clause 1 and 2 are only different legal theories within one element, such as those found within larceny (e.g., taking/obtaining/withholding). *See Medina*, 66 M.J. at 25–27. Since we conclude that both clauses 1 and 2 as the terminal element(s) will necessarily be implied by an allegation of criminality combined

with the appropriate factual allegation of an offense specifically listed in the MCM, Part IV, ¶¶ 60–113, we need not further decide whether clauses 1 and 2 are separate offenses from each other in addition to being alternative theories of liability.

**12.** We note that the military judge properly instructed the members as to the terminal element, and properly instructed them that they must be convinced beyond a reasonable doubt that the appellant's adultery was either service discrediting or prejudicial to good order and discipline. Record at 1767–69. *See also Medina*, 66 M.J. at 27 (noting that in a contested case, members will normally be instructed as to alternative theories of guilt under clauses 1 or 2 in the event that a clause 3 theory is invalidated).

er offense.[13] It does not follow from the holdings of *Medina, Miller,* or *Jones* that clauses 1 and/or 2 have to be expressly alleged when an Article 134 offense is individually charged and the theory of liability rests squarely within clauses 1 and/or 2 during the entire trial. In fact, the court in *Jones* stated in clear, direct terms:

> To be perfectly clear, this case is about lesser included offenses, not the constitutionality of Article 134....
>
> Moreover, we must take care to avoid the conflation of two unrelated propositions: the Presidents ability to suggest ways in which Article 134, UCMJ, might be charged, which we do not take issue with, and the ability of the President to declare that a particular example of an Article 134 UCMJ offense is a lesser included offense of something Congress defined as a criminal offense in a separate section of the UCMJ, and which is defined by elements that have no common ground with Article 134, UCMJ. This case addresses only the latter proposition.

*Jones,* 68 M.J. at 472.

**b.** *Implication of the Terminal Element*

Despite these distinctions, the appellant argues that the black letter law of *Sutton,* combined with the Supreme Court decision in *United States v. Resendiz–Ponce,* 549 U.S. 102, 127 S.Ct. 782, 166 L.Ed.2d 591 (2007), requires the specification to at least imply the terminal element. Appellant's Brief at 9–10, 13. In *Resendiz–Ponce,* the Supreme Court permitted the word "attempt" to imply the "substantial step" element. 549 U.S. at 108, 127 S.Ct. 782. Therefore, the appellant claims charging elements by implication is only allowed in attempt offenses. Appellant's Brief at 9. The appellant also places emphasis on the holding in *United States v. King,*

34 M.J. 95 (C.M.A.1992). In *King,* the Court of Appeals for the Armed Forces found that an adultery specification that did not allege the accused was married failed to state an offense because "it lacked utterly the essence of the offense—that at least one of the parties is married to another person." *Id.* at 97.

These arguments fail for two key reasons. First, nothing in the majority opinion in *Resendiz–Ponce* says an element can only be implied in attempt cases. *See Resendiz–Ponce,* 549 U.S. at 103–11, 127 S.Ct. 782. Second, the appellant's comparisons to other flawed specifications are inapplicable because they were all missing allegations of *facts* specific to the individual crimes charged. *See King,* 34 M.J. at 97 (allegation of marriage missing in adultery specification);[14] *Mayo,* 12 M.J. at 288 (no language in the specification, directly or by fair implication, which indicated the accused used a telephone or other means proscribed by federal statute to communicate an alleged bomb hoax); *United States v. Fleig,* 16 USCMA 444, 37 C.M.R. 64, 64–65, 1966 WL 4607 (1966) (for a hit-and-run offense, the specification was missing fact that the vehicle the accused was driving was involved in the collision). Such *factual* charging omissions are not analogous to omitting the terminal element that is common to all Article 134 offenses.

Instead, in a specification alleging an Article 134 offense, the terminal element is implied by the charge itself (Article 134, UCMJ), a sufficient factual allegation of prohibited conduct and an allegation of criminality. This proposition is supported by the historical treatment of Article 134 allegations. Recognizing the military was no longer bound by rigorous pleading standards, the Court of Military Appeals stated that the terminal element's omission from a specifica-

---

**13.** In *Medina,* while the other offense was an Article 134 offense, it was charged specifically as a violation of the Child Pornography Prevention Act, 18 U.S.C. §§ 2251(a), 2252A(a)(1), 2252A(a)(5)(A) (2000), as crimes and offenses not capital under clause 3 of Article 134. *Medina,* 66 M.J. at 22.

**14.** The specification in *King* did not allege the terminal element, and the court, referring to *United States v. Snyder,* 1 USCMA 423, 4 C.M.R. 15, 1952 WL 2675 (1952), mentioned that "[u]n-

der a charge of violating a training or fraternization regulation, of course, no allegation or showing of prejudice to good order and discipline or service discredit is required." *King,* 34 M.J. at 97 n. 6. While this footnote can be read to refer to an Article 92, UCMJ, violation, *Snyder* supports the proposition announced in *Marker,* and found that a pandering specification stated an offense even though it did not allege what is now the terminal element. *Snyder,* 4 C.M.R. at 21.

tion does not detract from conduct which is clearly service discrediting. *See Marker*, 3 C.M.R. at 134. As our citations in Part IIIb of this opinion demonstrate, the precedent permitting the absence of the terminal element has been consistent since *Marker*.

This principle was also maintained in *United States v. Choate*, 32 M.J. 423 (C.M.A. 1991). In *Choate*, the Court of Military Appeals recognized that the offense of indecent exposure under Article 134 required only that the showing of one's person be "willfully and wrongfully done." *Choate*, 32 M.J. at 427 (citations and internal quotation marks omitted). While finding the specification sufficient, the court "construed these words to mean that the charged conduct was done deliberately and in circumstances where it constituted a threat to good order and discipline." *Id.* at 427 (citing *United States v. Davis*, 26 M.J. 445, 448 (C.M.A.1988) and *Sadinsky*, 34 C.M.R. at 345 (additional citations omitted)). *See also United States v. McGlone*, 18 C.M.R. 525, 532 (A.F.B.R.1954) ("The presence of the word 'wrongful' in each specification was sufficient ... notice that his acts were alleged to have been effected under such improper circumstances as to be prejudicial to good order and military discipline or to constitute conduct of a nature to bring discredit upon the military service.") (citations omitted).[15]

Further guidance is found in the Court of Military Appeals' review of two Article 134 specifications that both contained the terminal element but did not include words or criminality indicating the appellant's acts were "wrongful" or "unlawful." *See Davis*, 26 M.J. at 447. In *Davis*, the court stated there was "no harm in alleging criminality in terms of the provisions of Article 134 which made the conduct wrongful, rather than by using a general allegation that appellant's

activity was 'wrongful' or 'unlawful.'" *Id.* at 449 (footnote omitted). Furthermore, when a specification does not contain words of criminality or properly set forth the acts which might be prejudicial to good order and discipline or service discrediting, the inclusion of the "general language of Article 134" will not necessarily save the specification. *Id.* Conversely then, if a specification does not contain the terminal element specifying that the conduct was prejudicial to good order and discipline or service discrediting, alleging the criminality of the specified conduct by use of the words "wrongful" or "unlawful" is sufficient.

In the present case, the specification itself properly alleges both criminality and the acts that *might be determined* as prejudicial to good order and discipline or service discrediting. The specification at issue provided notice to LCpl Fosler that while he was a married man and on active duty at Naval Station, Rota, Spain, he wrongfully had sexual intercourse with a woman not his wife.[16] The appellant was on notice that his conduct while a married active duty service member put him at risk of criminal liability if the conduct was service discrediting or prejudicial to good order and discipline.

Similar to the specification at issue in *Choate*, the specification here states the sexual intercourse was *wrongful*. Again, "wrongful" is employed as a word of criminality, and when alleged in concert with the specified conduct, it necessarily implies the terminal element. This is particularly true in the context of adultery, where alleging that the conduct was wrongful is required because it would normally not be a crime in civilian jurisdictions. As the Court of Military Appeals noted when discussing cross-dressing, "[a]part from the peculiar circumstances and demands of the military society,

15. R.C.M. 307(c)(3), Discussion ¶ (G)(ii) also provides: "If the alleged act is not itself an offense but is made an offense either by applicable statute (including Articles 133 and 134), or regulation or custom having the effect of law, then words indicating criminality such as 'wrongfully,' 'unlawfully,' or 'without authority' ... should be uses to describe the accused's acts."

16. We note the obvious drafting error in the specification raised by the appellant as an alter-

native argument that the specification fails to state an offense. Appellant's Brief at 17–18. Clearly, the specification should not include the word "by," while "having" is also written in the incorrect tense. However, this does not detract from our analysis. Irrespective of poor drafting, the appellant was not misled as to what charge he would have to defend against at trial. *See United States v. Farano*, 60 M.J. 932, 934 (N.M.Ct.Crim.App.2005) (citing *United States v. Dailey*, 37 M.J. 1078, 1080 (N.M.C.M.R.1993)).

there could be no crime." *Davis,* 26 M.J. at 448. *See* also *Parker v. Levy,* 417 U.S. at 744, 94 S.Ct. 2547 (" 'the military constitutes a specialized community governed by a separate discipline from that of the civilian' . . . [T]o maintain the discipline essential to perform its mission effectively, the military has developed what 'may not unfitly be called the customary military law' or 'general usage of the military service.' ") (internal citations omitted). Therefore, the wrongfulness of the appellant's conduct in the military context is what implies prejudice to good order and discipline, service discredit, or both.

#### c. *Structural Error and Notice*

The appellant finally argues that because the error is structural, it is irrelevant whether he would have greater notice of the charge if the Government had expressly alleged the terminal element. Appellant's Reply Brief at 5. As noted in *United States v. Wiechmann,* 67 M.J. 456, 463 (C.A.A.F.2009), "Structural errors involve errors in the trial mechanism so serious that a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence. . . . [T]here is a strong presumption that an error is not structural." (citations and quotation marks omitted). The alleged error in this case is not structural. It is a question of whether the specification stated an offense.

The test under *Sutton* for stating an offense includes whether the elements, expressed or implied, give the accused adequate notice. Despite the appellant's contention that notice is not at issue, he essentially argues for a logical extension of *Medina, Miller,* and *Jones.* However, constitutionally required fair notice was at the crux of the inquiry in these three cases. *See Jones,* 68 M.J. at 468 ("The question presented in this case implicates constitutional due process imperatives of notice"); *Miller,* 67 M.J. at 389 ("This precedent [of a notice requirement] is consistent with the Constitution and Supreme Court precedent regarding due process"); *Medina,* 66 M.J. at 26 ("fair notice resides at the heart of the plea inquiry"). This notice aspect of *Medina, Miller,* and *Jones* distances the appel-

lant's argument from those cases. Moreover, the military justice system is a "notice pleading jurisdiction" where the specification informs an accused of the offense against which he must defend and stands as a bar to future prosecution for the same conduct. *United States v. Farano,* 60 M.J. 932, 934 (N.M.Ct. Crim.App.2005) (citations and internal quotation marks omitted).

We are confident that the appellant had adequate notice of the elements he had to defend against for several reasons. First, the appellant was actually charged with an Article 134 violation. Second, adultery is not a novel specification, but is explicitly listed as an Article 134 offense whose elements are clearly outlined in the MCM, Part IV, ¶ 62b. Third, the trial defense counsel referred to the adultery charge in his opening statement, specifically noting that not all adultery is criminal. Record at 825. Fourth, by virtue of Article 137, UCMJ, the provisions of the Code were explained to the appellant at the time he entered active duty. PE 18 at 2. Finally, as our analysis shows, the terminal element was necessarily implied by the proper allegation of the conduct and its criminality as to give the appellant notice. As such, the appellant was sufficiently informed of the adultery charge and the elements of that charge against which he had to defend. We are also satisfied that the specification adequately listed when and where the offense occurred as to bar future prosecution for the same conduct.

### V. CONCLUSION

Extending the holdings of *Medina, Miller,* and *Jones* as argued by the appellant is contrary to established precedent and the clear language of *Jones* indicating that the Court of Appeals for the Armed Forces was not taking issue with "the President's ability to suggest ways in which Article 134, UCMJ, might be charged." *Jones,* 68 M.J. at 472. We further conclude the principles firmly established in *Parker v. Levy* permit deference to the military's treatment of charging offenses under Article 134, which leaves our decision squarely within the bounds of *Sutton* and *Resendiz–Ponce.*

Both the findings of guilty and sentence approved by the convening authority are affirmed.

Senior Judge MITCHELL and Judge BEAL concur.