EFFRON, Chief Judge
(dissenting);
While serving as a drill instructor at the Naval Junior Reserve Officer Training Corps Program in Rota, Spain, Appellant engaged in sexual intercourse with a high school student in the program. The ensuing charges included an allegation that Appellant, who was married, committed adultery with the student — a sixteen-year-old dependent daughter of an active duty Navy servieemem-ber — in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (2006) (proscribing “all disorders and neglects to the prejudice of good order and discipline in the armed forces, all conduct of a nature to bring discredit upon the armed forces, and crimes and offenses not capital”).
The adultery charge employed the sample specification set forth in the Manual for Courts-Martial. The specification used the long-standing format for Article 134 offenses, employing wording that predates enactment of the UCMJ.
In this appeal, Appellant challenges the legality of the traditional wording of specifications under Article 134. Appellant does not challenge the ruling of the military judge regarding the legal sufficiency of the prosecution’s evidence on each of the elements of the offense; nor does Appellant challenge the *234 adequacy of the military judge’s instructions to the court-martial panel on the elements of the offense. Appellant contends on appeal that the charge should be dismissed on the theory that the standard wording for an Article 134 charge does not constitute an offense under the Uniform Code of Military Justice. The majority opinion agrees with Appellant’s contention.
Article 134 serves as a critical foundation to the maintenance of good order and discipline in the armed forces. See Parker v. Levy, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974). The majority decision calls into question the validity of every court-martial conviction that has employed the traditional specification. Trial and appellate courts will be required to reexamine Article 134 charges in pending proceedings; and further litigation is likely concerning the impact of the decision on prior convictions under Article 134. For the reasons set forth below, I respectfully dissent.
I. PRETRIAL AND TRIAL PROCEEDINGS

The text of the charge and its specification

The Commanding General, II Marine Expeditionary Force, Camp Lejeune, North Carolina, convened a general court-martial to consider charges against Appellant, including the following:
Charge II: VIOLATION OF THE UCMJ, ARTICLE 134
Specification: In that Lance Corporal James N. Fosler, U.S. Marine Corps, Marine Corps Security Force Regiment, on active duty, a married man, did, at or near Naval Station, Rota, Spain, on or about 26 December 2007, ... wrongfully hav[e] sexual intercourse with [SK], a woman not his wife.

The legality of the charge

The convening authority, in making the referral, acted upon the advice of his staff judge advocate (SJA). The SJA advised the convening authority that the “specifications under the charges allege an offense under the UCMJ.” See Article 34, UCMJ, 10 U.S.C. § 834 (2006) (precluding a convening authority from referring a case for trial by general court-martial in the absence of such advice).
The SJA’s advice as to the legality of the charge reflected well-established military law. See, e.g., Manual for Courts-Martial, United States pt. IV, para. 62.f (2008 ed.) (MCM (2008 ed.)) (sample specification); Manual for Courts-Martial, United States, app. 6c., para. 127 (1969 rev. ed.) (MCM (1969 rev. ed.)) (sample specification in predecessor edition); Manual for Courts-Martial, United States, app. 6, para. 119 (1951 ed.) (sample specification in the first edition of the Manual issued following enactment of the UCMJ); Manual for Courts-Martial, U.S. Army, app. 4, para. 117 (1949 ed.) (sample specification in the Manual in force for Army proceedings during the period immediately preceding enactment of the UCMJ).
The charge, as drafted, also reflected the traditional relationship between the text of the charge and the elements of this offense. The President, in the Manual for Courts-Martial, set forth the following guidance concerning the elements of the offense at issue in the present appeal:
(1) That the accused wrongfully had sexual intercourse with a certain person;
(2) That, at the time, the accused or the other person was married to someone else; and
(3) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.
MCM pt. IV para. 62.b (2008 ed.) In Rule for Court-Martial (R.C.M.) 307(e)(3), which governs the drafting of charges, the President emphasized that a “specification is a plain, concise, and definite statement of the essential facts constituting the offense charged.” The President further added: “A specification is sufficient if it alleges every element of the charged offense expressly or by necessary implication.” Id.
Consistent with authority to address an element “by necessary implication” rather than “expressly,” the President has provided *235 the following guidance with respect to the drafting of specifications for offenses under Article 134:
A specification alleging a violation of Article 134 need not expressly allege that the conduct was “a disorder or neglect,” that it was “of a nature to bring discredit upon the armed forces,” or that it constituted “a crime or offense not capital.” The same conduct may constitute a disorder or neglect to the prejudice of good order and discipline in the armed forces and at the same time be of a nature to bring discredit upon the armed forces.
MCM pt. IV, para. 60.c.(6)(a) (2008 ed.); accord MCM para. 213a, (1969 rev. ed.). see MCM, Analysis of Punitive Articles app. 23 at A23-19 (2008 ed.) (citing para. 213 of the 1969 Manual as the source for the current provision).
The drafters’ analysis of the 1969 Manual noted that under paragraph 213, the specification “need not expressly allege” which clause the conduct violates. Id. In support of this provision, the drafters’ analysis relied upon United States v. Herndon, 1 C.M.A. 461, 4 C.M.R. 63 (1952) (affirming a conviction in which the specification did not refer to any of the three clauses within Article 134). Herndon expressly relied upon the language of the sample specification, as set forth in the 1951 Manual, and affirmed a finding that employed the language of the sample specification—language similar in pertinent respects to the specification at issue in the present case. Herndon, 1 C.M.A. at 463-65, 4 C.M.R. at 55-57. Herndon serves as the controlling precedent in support of the validity of the guidance in the Manual. See, e.g., United States v. Mayo, 12 M.J. 286, 293 (C.M.A.1982) (citing with approval Herndon and para. 213a).
The observation in Mayo, 12 M.J. at 293—that our Court “has not held that a specification lodged under Article 134 must include an allegation that [the] accused’s conduct was to the prejudice of good order and discipline or to the discredit of the armed forces” — underscores that the guidance in the Manual is consistent with the judicial interpretation of the UCMJ. In that context, the SJA properly advised the convening authority that the charged conduct constituted an offense under the UCMJ.

Pretrial proceedings

During the extensive consideration of pretrial motions in this case, neither party raised an issue concerning the wording of the specification. The defense did not move to make the charges more definite or for a bill of particulars under R.C.M. 906(a)(6).

The defense motion at the close of the Government’s case

During the trial, the prosecution introduced evidence that Appellant was an instructor in the Naval Junior Reserve Officer Training Corps Program, that he had engaged in sexual activity with a high school student in the program, that the student was sixteen years old, and that she was the dependent of an active duty member of the Navy. After the Government presented its evidence and rested, the defense presented a motion for a finding of not guilty under R.C.M. 917, including:
a motion as to Charge II, under Article 134, because the government has failed to show that it was prejudicial to good order and discipline, or service discrediting, and also failed to allege it in the charge sheet. Therefore, it’s a failure to state an offense. He can’t be found guilty of a crime, according to this Specification as pled.
At first, the military judge viewed the defense as offering a motion under R.C.M. 917 (requiring the military judge to enter a finding of not guilty “if the evidence is insufficient to sustain a conviction of the offense affected”). In the motion proceeding, the defense offered no explanation as to why the prosecution’s evidence of sexual activity between an instructor and a student who also was a military dependent did not meet the legal sufficiency standard with respect to proof that Appellant’s conduct was either prejudicial to good order and discipline or service discrediting under applicable law. The military judge denied the motion, and Appellant has not challenged his ruling under R.C.M. 917 in the present appeal.
*236 The defense then asked the military judge to address the defense objection that the specification did not “allege a critical element, which is prejudicial to good order and discipline, or ... service discrediting.” The military judge responded by directing defense counsel’s attention to the sample specification in the Manual for Courts-Martial. The following dialogue ensued:
MJ: Can you tell me, in what way the Specification that’s currently on the charge sheet, in the case at bar, falls short of that simple specification, or are you saying that the sample specification in the Manual for Courts-Martial is, itself, is deficient in that it, like many of the 134’s, does not explicitly have the terminal element of—
DC: Yes, ma’am. Our argument is it should explicitly say that it’s — that under the circumstances the conduct was prejudicial to good order and discipline, or of a nature to bring discredit upon the armed forces, so that Lance Corporal Fosler would know whether that other element, one of the three elements is prejudicial to good order and discipline or service discrediting.
MJ: There’s no requirement that the government has to either state in the Specification which one it is, or state either of them in the Specification.
DC: Yes, ma’am.
MJ: The government can prove up either of them in this case. And the court finds that there is certainly evidence to survive a [motion under R.C.M.] 917 on the terminal element of conduct prejudicial to good order and discipline or service discrediting, to survive the [R.C.M.] 917 motion at this point.
DC: Yes, ma’am. Thank you.
The defense offered no legal analysis in support of its objection to the wording of the specification as drafted. Likewise, the defense did not address this Court’s precedent in the Hemdon-Mayo line of cases approving the Manual’s sample specification, nor did the defense offer any legal authority for the proposition that the military judge should reject reliance on the sample specification.

Instructions

After the parties concluded their presentation of evidence on the merits, the military judge instructed the court-martial panel on every element of the offense:
Members, looking next at Charge II and the sole Specification thereunder, the accused is charged with the offense of adultery. In order to find the accused guilty of this offense, you must be convinced, by legal and competent evidence, beyond a reasonable doubt:
First, that at or near Naval Station Rota, Spain, on or about 26 December 2007, the accused wrongfully had sexual intercourse with [SK],
Secondly, that at the [time, the] accused was married to another; and Thirdly, that under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces, or was of a nature to bring discredit upon the armed forces.
The military judge then explained, in detail, the meaning of the terms in the third element:
“Conduct prejudicial to good order and discipline” is conduct that causes a reasonably direct and obvious injury to good order and discipline.
“Service discrediting conduct” is conduct that tends to harm the reputation of the service, or to lower it in public esteem.
At that point, the military judge provided further detailed instructions on the meaning of the third element in the context of an adultery charge:
Not every act of adultery constitutes an offense under the Uniform Code of Military Justice. To constitute an offense, the government must prove, beyond a reasonable doubt, that the accused’s adultery was either directly prejudicial to good order and discipline, or service discrediting.
“Conduct prejudicial to good order and discipline” includes adultery that has an obvious and measurably divisive effect on the discipline, morale, or cohesion of a military unit or organization, or that has a clearly detrimental impact on the authority, stature, or esteem of a service member.
*237 “Service discrediting conduct” includes adultery that has a tendency, because of its open notorious nature, to bring the service into disrepute, to make it subject to public ridicule, or to lower it in public esteem.
Under some circumstances, adultery may not be prejudicial to good order and discipline, but nevertheless may be service discrediting, as I’ve explained those terms to you.
Likewise, depending on the circumstances, adultery could be prejudicial to good order and discipline, but not be service discrediting.
The military judge then added detailed guidance on the application of these instructions to the facts of the case:
In determining whether the alleged adultery in this case is prejudicial to good order and discipline, or is of a nature to bring discredit upon the armed forces, you should consider all the facts and circumstances offered on this issue including, but not limited to, the accused’s marital status, military rank, grade, or position; the impact of the adultery on a unit or organization of the accused, such as a detrimental effect on a unit or organization, morale, teamwork and efficiency; where the adultery occurred; who may have known of the adultery; and the nature, if any, of the official and personal relationship between the accused and [SK].
In the present appeal, Appellant has not challenged the adequacy of these instructions, nor has Appellant challenged the legal sufficiency of the evidence upon which the court-martial panel returned a finding of guilty on the charge of adultery.
II. APPELLATE CONSIDERATION
The majority offers a variety of reasons for concluding that the traditional specification does not set forth an offense under the UCMJ.

Historical perspective

The majority opinion speculates that the format of the traditional specification reflects prior jurisprudence in which Article 134 offenses were treated as included within all of the other “enumerated articles” for purposes of treatment as lesser included offenses. According to the majority, “As the charged offense was an enumerated article and therefore did not contain the terminal element [of Article 134], its explicit allegation must have been considered unnecessary.” 70 M.J. at 227-28 (citing United States v. Foster, 40 M.J. 140, 143 (C.M.A.1994); William Winthrop, Military Law and Precedents 109 (2d ed. Gov’t Printing Office 1920) (1895)). Foster contains no discussion of historical basis of the format for Article 134 offenses, and nothing in Winthrop suggests that the traditional format was developed to address the relationship between greater and lesser offenses. The majority opinion does not identify any historical record that would justify the conclusion that the impetus for the format of the traditional specification came from a concern about the treatment of lesser included offenses.

Precedent

The majority opinion does not cite any case in which our Court has held that the traditional specification fails to state an offense under the UCMJ. After acknowledging the Herndon line of cases upholding the traditional specification, the majority opinion contends that the result in the present case is compelled by our recent decisions in United States v. McMurrin, 70 M.J. 15, 17 (C.A.A.F.2011); United States v. Girouard, 70 M.J. 5, 9 (C.A.A.F.2011); United States v. Jones, 68 M.J. 465, 468 (C.A.A.F.2010); United States v. Miller, 67 M.J. 385, 388-89 (C.A.A.F.2009); United States v. Medina, 66 M.J. 21, 24-25 (C.A.A.F.2008). 70 M.J. at 228. These eases represent the latest attempt by our Court to bring some order to consideration of lesser included offenses — a subject that has been the subject of considerable instability in military law. See, e.g., Gary E. Felicetti, Surviving the Multiplicity/LIO Family Vortex, Army Law, Feb. 2011, at 46, 46-48 (describing the frequent shifts in judicial doctrine prior to the current set of cases). These eases address the role of elements in ascertaining whether a purported lesser offense is included within a *238 charged offense for purposes of Article 79, UCMJ, 10 U.S.C. § 879 (2006) (governing convictions for lesser included offenses).
The cases relied upon in the majority opinion stand for the proposition that a conviction may not be affirmed under Article 79 if the purported lesser included offense contains an element that is not necessarily included within the charged offense. These eases underscore the necessity of including all elements within the text of a charge; but that is not the primary issue in the present ease. R.C.M. 307(c)(3) specifically states that “[a] specification is sufficient if it alleges every element of the charged offense expressly or by necessary implication.” If the specification before us does not meet that test, it is invalid irrespective of our holdings in the Medinctr-McMurrin line of cases. In that regard, the primary question in the present ease is whether the specification at issue necessarily included all the elements of the charged offense.

Alternate theories under Article 18h

The majority opinion states that “[a]n accused must be given notice as to which clause or clauses [of Article 134] he must defend against.” 70 M.J. at 230. The opinion cites no case in which we have held that a specification must identify a clause or clauses within Article 134 in order to state an offense under the UCMJ and survive a motion to dismiss. The opinion relies on our recent decision in Medina, 66 M.J. at 26, but that case does not require that a specification identify the Article 134 clause under which an individual has been convicted. On the contrary, Medina expressly recognizes that an accused charged with an offense under Article 134, clause 3 (non-capital crimes and offenses) can be convicted of either a clause 1 offense (conduct prejudicial to good order and discipline) or a clause 2 offense (service discrediting conduct) even if neither is mentioned in the specification. See id. at 26-27. Such a conviction is valid, under Medina, so long as the military judge has addressed the alternate theory through instructions in a contested case or through the plea inquiry or a pretrial agreement in a guilty plea case. See id. In the present case, involving a contested trial, the military judge provided detailed instructions with respect to both service discrediting conduct and conduct prejudicial to good order and discipline.
To the extent that an accused can demonstrate that information beyond the text of the sample specification may be necessary in a particular case, the accused may file a motion for a more definite specification or a bill of particulars under R.C.M. 906(b)(6). Such a motion, however, does not address the separate question of whether a charge must be dismissed for failure to state an offense under R.C.M. 907(b)(1)(B), but instead involves a determination as to whether relief is appropriate under R.C.M. 906(b)(6). In the present case, the defense did not move for a more definite specification or for a bill of particulars.

Words of criminality

As noted in the majority opinion, this case presents the question of whether the specification necessarily implied an element of the offense. 70 M.J. at 230. See R.C.M. 307(c)(3). In this case, the issue is whether the traditional specification necessarily implies that the charged conduct was either prejudicial to good order and discipline or service discrediting.
The majority opinion states that “the word ‘wrongfully’ [in the specification] cannot of itself imply the terminal element,” contending that we are compelled to dismiss the specification because “words of criminality speak to mens rea and the lack of a defense or justification, not to the elements of an offense.” 70 M.J. at 230-31. In support of that proposition, the majority opinion cites United States v. King, 34 M.J. 95, 97 (C.M.A.1992), and United States v. Fleig, 16 C.M.A. 444, 445, 37 C.M.R. 64, 65 (1966), but neither King nor Fleig compels the result in the present ease. Neither case addressed the relationship between an allegation of wrongfulness and the terminal element. Indeed, both cases involved specifications that did not contain the terminal element, a circumstance that drew no attention from the Court in either case. In both cases, the Court focused on factual deficiencies in the specifications, not the terminal element. As noted by the *239 Court of Criminal Appeals in discussing the relationship of King and Fleig to the present case:
[T]he ... comparison[ ] to other flawed specifications is inapplicable because they were all missing allegations of facts specific to the individual crimes charged. See King, 34 M.J. at 97 (allegation of marriage missing in adultery specification); Fleig, [16 C.M.A. at 445-46, 37 C.M.R. at 64-65] (for a hit-and-run offense, the specification was missing fact that the vehicle the accused was driving was involved in the collision). Such factual charging omissions are not analogous to omitting the terminal element that is common to all Article 134 offenses.
United States v. Fosler, 69 M.J. 669, 675 (N.M.Ct.Crim.App.2010) (emphasis and citations omitted).
The Court of Criminal Appeals then addressed the question of whether the elements of the offense were necessarily implied in the present case. After carefully discussing our prior cases and the specification at issue in this case, the court offered the following conclusion:
[I]f a specification does not contain the terminal element specifying that the conduct was prejudicial to good order and discipline or service discrediting, alleging the criminality of the specified conduct by use of the words “wrongful” or “unlawful” is sufficient.
In the present case, the specification itself properly alleges both criminality and the acts that might be determined as prejudicial to good order and discipline or service discrediting. The specification at issue provided notice to LCpl Fosler that while he was a married man and on active duty at Naval Station, Rota, Spain, he wrongfully had sexual intercourse with a woman not his wife. The appellant was on notice that his conduct while a married active duty service member put him at risk of criminal liability if the conduct was service discrediting or prejudicial to good order and discipline.
... [T]he specification here states the sexual intercourse was wrongful. Again, “wrongful” is employed as a word of criminality, and when alleged in concert with the specified conduct, it necessarily implies the terminal element. This is particularly true in the context of adultery, where alleging that the conduct was wrongful is required because it would normally not be a crime in civilian jurisdictions.... [T]he wrongfulness of the appellant’s conduct in the military context is what implies prejudice to good order and discipline, service discredit, or both.
Id. at 676-77 (emphasis and footnote omitted). I agree. Our precedent supports use of the traditional specification, and nothing in our case law compels a contrary result.
III. ADHERENCE TO PRECEDENT
The present ease does not require us to decide whether any of the guidance in Part IV of the Manual establishes a binding requirement. Here, we are dealing with well-established judicial precedent that predates enactment of the UCMJ. In that regard, the President’s guidance both reflects the state of the law, and informs the application of the rule set forth in R.C.M. 307(c)(3) regarding the treatment of elements in the drafting of specifications.
If this were a ease of first impression, the approach suggested in the majority opinion might well provide an appropriate ground for a decision. We are not dealing with a fresh case, however, but instead have a case involving long-standing precedent under military law.
The Supreme Court has emphasized that adherence to precedent in judicial decisions — the doctrine of stare decisis — provides “the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process.” Payne v. Tennessee, 501 U.S. 808, 827, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991). Relying on our precedent, the President has promulgated guidance that has governed the charging of offenses under Article 134 throughout the history of the UCMJ. Notwithstanding that reliance, the majority *240 opinion holds that a charge that employs the traditional specification does not set forth an offense under the UCMJ. Given the significant reliance on Article 134 charges in maintaining good order and discipline in the armed forces, the majority opinion is likely to lead to extensive litigation about the impact of the decision on pending courts-martial and appellate proceedings; and the decision may well result in collateral challenges to prior convictions that relied upon the traditional specification.
In considering the application of precedent, we have observed that “[s]tare decisis is a principle of decision making, not a rule, and need not be applied when the precedent at issue is ‘unworkable or ... badly reasoned.’” United States v. Tualla, 52 M.J. 228, 231 (C.A.A.F.2000) (omission in original) (quoting Payne, 501 U.S. at 827, 111 S.Ct. 2597). In terms of workability, overturning this precedent will lead us into uncharted territory, with numerous challenges to past and present cases involving convictions under Article 134. By contrast, the procedure approved in the Herndon line of cases — a procedure that provided Appellant with the same notice and opportunity to respond as has been provided traditionally to service-members charged with Article 134 offenses— is neither unworkable nor badly reasoned. Under these circumstances, I would adhere to precedent and affirm the decision of the Court of Criminal Appeals.