# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS
**Washington, DC**

## UNITED STATES
**v.**
### Ira L. HYNES
### Chief Warrant Officer, U.S. Coast Guard

**CGCMG 0101**
**Docket No. 1055**
**29 September 1998**

General Court-Martial convened by Commander, Fourteenth Coast Guard District. Tried at the Office of the Commander, Fourteenth Coast Guard District, Honolulu, Hawaii, on 8-12 May 1995.

| | |
|---|---|
| Military Judge | CAPT Lane I. McClelland, USCG |
| Trial Counsel | LT Sheryl L. Dickinson, USCG |
| Detailed Defense Counsel | LT John C. Kauffman, JAGC, USN |
| Appellate Defense Counsel | LCDR Allen Lotz, USCG |
| Appellate Defense Counsel | LT Richard R. Beyer, USCG |
| Appellate Government Counsel | LCDR Brian F. Binney, USCG |

**BEFORE**
**PANEL FOUR**
**BAUM, KANTOR, AND WESTON**
Appellate Military Judges

BAUM, Chief Judge:

Appellant was tried by general court-martial, military judge alone. Contrary to his pleas, he was convicted of the following offenses: two specifications of violating Coast Guard Regulations by wrongfully selling U.S. property and by causing unnecessary expenditure of public money; two specifications of dereliction of duty by failing to properly handle abandoned privately owned weapons, and by willfully modifying Coast Guard weapons; one specification of maltreatment of a person subject to his orders; one specification of wrongful disposition of a pistol slide, military property of the U.S.; ten specifications of larceny of weapons, weapons parts that were military property, cordless telephones and a color monitor that were military property and money; one specification of assault of a petty officer; three specifications of wrongful sale of two rifles and a pistol; one specification of carrying a concealed weapon; and one specification of failure to register firearms as required by statute, in violation of Articles 92, 93, 108, 121, 128, and 134, UCMJ.

After treating various offenses as multiplicious with others for sentencing purposes, the military judge sentenced Appellant to dismissal from the Coast Guard, confinement for two years, forfeiture of $2,000 pay per month for forty-eight months, and a fine of $9,500, which, if not paid, could result in an additional two years confinement. The military judge also stated that if reimbursement is accomplished she would recommend that the convening authority disapprove up to $1,500 of the fine. The convening authority went beyond that recommendation and reduced the fine from $9,500 to $4,500, and reduced the additional confinement, if not paid, from two years to one year. The convening authority also reduced the adjudged confinement to fifteen months and the forfeiture to $1,722 pay per month for twenty-seven months, but approved the dismissal as adjudged. Before this Court, Appellant has assigned four errors: that the military judge erred by failing to suppress statements made by Appellant to criminal investigators and all evidence derived from those statements; that the RCM 1106 recommendation of the staff judge advocate fails to address a defense allegation of legal error; that a dismissal from the Coast Guard is inappropriately severe; and that this Court lacks jurisdiction because of an improper judicial appointment. The last assignment has been resolved by the U.S. Supreme Court s determination in *Edmond v. United States*, __U.S.__, 117 S.Ct. 1573 (1997), that this Court s judicial appointments are proper. Appellant s assignment is rejected for that reason. Appellant s other assignments will be addressed. All motions not acted on previously by the Court are hereby granted.

## Admissibility of Statements to Criminal Investigators

The facts giving rise to this assignment are that the Fourteenth District Coast Guard Investigations office (CGI) was conducting an investigation of allegations of questionable activities and purchases by Appellant, the warrant gunner in charge of the Fourteenth District Armory. As part of this investigation, two CGI agents confronted Appellant outside the armory one afternoon upon his return to Hawaii from a period of temporary additional duty and leave on the mainland. After first identifying themselves and advising Appellant that they were there to search the armory area, and his desk specifically, the agents conducted a "pat down" search of him and requested permission to search his desk. Appellant agreed by signing a written consent-to-search form and went inside with the agents at their request, leading them to his desk. With one agent observing, the other agent began removing items from the desk and placing them on the floor.

When Appellant was first confronted outside the armory, he was told by agents that they would not be questioning him that day. Furthermore, he was not given the rights warning that Article 31, UCMJ and Military Rules of Evidence (MRE) 305 require prior to questioning a person suspected of an offense. Appellant testified that, nevertheless, the agent asked him questions concerning the ownership of the parts being removed from the desk. The agent searching the desk, while unable to recall asking any specific questions, acknowledged in his testimony that he may have asked Appellant whether gun parts being removed from the desk were Appellant s or the Government s, but that he did not see such questions as calling for answers that would be incriminating. Conversely, the other agent, who was the more experienced of the two, testified with certainty that no questions were asked of Appellant before he was warned in accordance with Article 31, UCMJ.

After the removal of several items from the desk, the agent pulled out a small white envelope and Appellant stated, in effect: "You got me. I ordered that part for myself. It was a stupid thing to do." Appellate Exhibit VI; Record at 84. With that statement, the observing agent took Appellant aside and informed him of his Article 31, UCMJ, rights and his right to counsel pursuant to *Miranda v. Arizona,* 384 U.S. 436 (1966) and *U.S. v. Tempia*, 16 USCMA 629, 37 CMR 249 (1967), but did not give the additional "cleansing" advice recommended in *U.S. v. Seay*, 1 M.J. 201, 204 (CMA 1975), that any incriminating statements made before the Article 31, UCMJ, warning could not be used against him. See *U.S. v. Lichtenhan*, 40 M.J. 466, 468 (CMA 1994). Thereafter, Appellant waived his rights and answered questions by the agents as the search continued. At a subsequent interrogation a month later, after warnings under Article 31, UCMJ and *Miranda/Tempia* were repeated, he, again, waived his rights and submitted to questioning, but, as before, without a "cleansing" warning.

Based on the foregoing, Appellant contends that all statements made by him at the armory on the day of the search were involuntary and in violation of the requirements of Article 31, UCMJ. At trial, Appellant presented this issue by way of a motion to suppress the statements and the evidence resulting from them. That motion was fully litigated, with the military judge hearing testimony from the agents and Appellant. Based on the evidence submitted, the judge concluded that no pre-warning questions were asked and that Appellant s initial admission was voluntary. She denied the motion to suppress, supporting that ruling with detailed findings of fact. Appellate Exhibit XXVII. Appellant has asked this Court to reject the judge s findings in this regard and to find, instead, that Appellant was questioned about various items as they were removed from his desk, before being warned, and that his admission was in response to such questioning.

According to Appellant, that admission and his later statements that day should not be considered voluntary. He submits that all questioning at the Armory was one continuous situation that took place in an inherently coercive atmosphere, without time for Appellant to think things through. Moreover, citing *U. S. v. McCraig*, 32 M.J. 751 (ACMR 1991), Appellant asserts that the failure to provide him with "cleansing" advice is a factor to be considered in determining whether later statements are voluntary and admissible. Without the information that statements already made could not be used against him, Appellant contends that the usual rights warnings were insufficient to make him realize that it was not too late to invoke his right to remain silent. As a result, Appellant submits that his statements were involuntary and all specifications to which his statements related should be set aside.

In assessing this issue, we must first determine what standard to use in reviewing the trial judge s ruling. The Government, citing *U.S. v. Kosek*, 41 M.J. 60 (CMA 1994), tells us that determining whether an interrogation occurred is a question of law, which is reviewable *de novo*, but that, since such a determination is based on factual findings, we should defer to the military judge s findings of fact. The Government cites *U.S. v. Sullivan*, 42 M.J. 360 (1995) and *U.S. v. Middleton*, 10 M.J. 123, 133(CMA 1981), for the general proposition that a military judge s findings of fact should not be disturbed unless unsupported by the evidence of record or clearly erroneous. Government Answer at p.4. That proposition and those cases relate to our higher court s obligation under Article 67(c), UCMJ, to "take action only with respect to matters of law." In contrast, a court of criminal appeals has an additional fact finding responsibility under Article 66(c), UCMJ, which permits it to substitute its own judgment on factual

issues. *U.S. v. Cole*, 31 M.J. 270, 272 (CMA 1990). The Government acknowledges our authority pursuant to *U.S. v Cole*, supra, but, nevertheless, asserts that the principle of deference to the trial bench on factual matters normally applies even when a court of criminal appeals is exercising its power of *de novo* review.

We have given due deference to the fact that the military judge was present and heard the witnesses, as Article 66(c) requires of us. However, we have exercised our independent fact finding authority by weighing the evidence of record for ourselves and deciding whether we agree with the military judge s finding that no questions were asked of Appellant before the Article 31, UCMJ, warning was issued.

In weighing that evidence, we first take note of Appellant s answer to his counsel s query whether the CGI agent searching his desk asked questions like, "What is this?", "Is this yours?", "Is this the government s?". Appellant responded in the following manner: "Yes. I remember the que I don t know exactly when he asked that. **I know it was real early[,] on the first three or four pieces that he pulled out."** Record at 83. [Emphasis added]. This inquiry was followed up by:

> Q: And can you recall, was he at that point stacking the items in a these are Gunner Hynes and these are the government piles?
>
> A: He had some piles going. I when I said when I said, yeah, this is mine, that s the government, that s the government s.
>
>
> Q: Now, at some point apparently, he pulls out a white envelope, is that correct?
>
> A: Yeah.
>
> Q: Can you recall if he asked you a question specifically about that white envelope?
>
> A: It went something like, "What is that? What s in here?" Something like that.
>
> Q: And at that point is when you said, "You got me." Is that correct?
>
> A: Yeah.

Record at 84.

As indicated previously, the agent searching Appellant s desk, did not recall asking any specific questions before the Article 31 warnings were given, but agreed that he may have asked about the ownership of the parts being removed from the desk. When confronted with his signed and sworn summary of testimony

from the Article 32 pretrial investigation, which stated that he had asked Appellant about weapons parts during the desk search before advising Appellant of his rights, the agent said that he did not read it carefully before signing and should have said "may have asked him questions about parts." In contrast, the senior agent categorically denied that any such questions were asked before the Article 31 warning. It is this senior agent s unequivocal testimony that the military judge relied upon in arriving at her finding that no questions were asked before the rights advisement.

We recognize that the trial judge saw and heard the witnesses in arriving at her findings, and we have her rationale for relying on the testimony of the senior agent at Record 119-120. However, after weighing the testimony of Appellant, the summarized testimony from the Article 32 investigation, and the testimony of the agents, we are persuaded differently on this particular issue. With regard to the testimony of the agent who searched Appellant s desk, we find the following responses to trial counsel on redirect examination particularly telling:

> Q: Okay. So you think it s possible that you asked questions of, is this yours or is this the government s, kind of questions?
>
> A: Yes, ma am. It s possible.
>
> Q: Is there any time during the search of this desk that you know you asked him such questions?
>
> A: Oh, yes. After after he was read his rights, I asked him point blank, is this
>
> yours, is this the government s, **because that was the only way I was going to separate. There was such a large number of items there that I had for expediency sake, I was going to just take his word on whether it was the government s or the or his personal**. (Emphasis added)
>
> Q: But but you didn t consider that type of question really incriminating per se, right?
>
> A: No.

Record at 71.

We believe from the evidence that the agent searching the desk placed items in separate piles from the outset. In doing this, it would have been impossible for him to differentiate between items belonging to the Government and those belonging to Appellant without asking the Appellant about ownership, as the agent s above quoted answer substantiates. Furthermore, in light of his belief that such questions would not prompt incriminating answers, we find it reasonable to conclude that he asked those questions from the outset to facilitate separation of the items he found. The agent s signed and sworn summarized Article

32 testimony confirms our judgment.

Accordingly, we find that Appellant was asked questions before being warned of his rights and that these questions were in violation of Article 31, UCMJ and M.R.E 305. Furthermore, we find that the incriminating statements made just prior to the Article 31 warnings were in response to the questioning by the investigating agent and should have been suppressed. We will set aside that portion of the finding of guilty to which they relate. As to the subsequent statements made after warnings on the day of the search and a month later, we have applied the standard from *Oregon v. Elstad*, 470 U.S. 298 (1985), and find from the totality of the circumstances that the subsequent statements were voluntary and in compliance with Article 31, UCMJ and M.R.E. 305. Although Appellant was not warned that his prior incriminating statements could not be used against him, that is but one factor to be considered. The prior statements were not used to elicit the subsequent statements, nor is there any evidence that the later statements were coerced. Hence, we have determined that denial of the suppression motion with respect to those subsequent statements was proper, and Appellant s assignment of error with regard to those later statements is rejected.

Before leaving this subject, however, something needs to be said about the actions of the CGI agents. They had been investigating and developing evidence against Appellant for two weeks and he was clearly suspected of offenses when they confronted him and sought his permission to search his desk. While an Article 31, UCMJ, warning is not required in order to obtain consent to search, *U.S. v. Frazier*, 34 M.J. 135 (CMA 1992), it is absolutely necessary for any questioning in which an incriminating response is a reasonable consequence. M.R.E. 305. The agents were investigating, among other things, whether Appellant had made Government purchases of weapon parts for use on his personally owned weapons. When Appellant was asked to identify whether certain parts were his or the Government s, an incriminating answer was a reasonable consequence and demanded a warning in accord with Article 31 and M.R.E 305. The experienced, senior agent recognized this fact and said as much in his testimony, but denied that any questions were asked before that warning during the desk search. We believe his denial runs counter to the weight of the evidence and common sense, and, therefore, we have rejected his version of events on this important issue. This leads us to the second assignment of error and its underlying assertion of legal error by the trial defense counsel.

## Failure of the Staff Judge Advocate s Recommendation to Address A Defense

## Allegation of Legal Error Of Possible Perjury By A Government Witness

Appellant s defense counsel submitted a petition for clemency to the convening authority containing an allegation of perjury by the CGI agent who searched Appellant s desk, based on the difference between that agent s trial testimony and counsel s recollection of the agent s testimony at the Article 32 investigation. In support of the perjury allegation, counsel referred to the agent s signed sworn summarization of Article 32 testimony and an attached affidavit from the Article 32 investigating officer detailing his recollection of the agent s testimony as freely acknowledging questioning of Appellant before any warning was given. Counsel stated that he was submitting the allegation as a legal error and requested

that the convening authority inquire into it before taking action on the sentence. Appellant points out that there was no mention of this matter in the staff judge advocate s recommendation prepared before the clemency petition and that there was no addendum to the recommendation, afterwards, indicating whether the staff judge advocate agreed or disagreed with the allegation of legal error, as required by RCM 1106(d)(4). Citing *U.S. v. Hill*, 27 M.J. 293, 296-297 (CMA 1988) and *U.S. v. Goodes*, 33 M.J. 888, 889-890 (CGCMR 1991), Appellant asserts that when the staff judge advocate fails to respond to an allegation of legal error raised in a timely manner, the action of the convening authority must be set aside and the case returned for a new action, unless this Court can be certain that the allegation of legal error would not have foreseeably led to a favorable action by the convening authority.

The Government, in response, acknowledges that the staff judge advocate should have issued an addendum to his RCM 1106 recommendation addressing the allegation of legal error, but argues that remand is not warranted because a properly prepared recommendation would not have included a favorable comment from the staff judge advocate or resulted in more favorable action by the convening authority. In support of this argument, the Government has submitted an affidavit from the staff judge advocate stating that the convening authority inquired into the defense allegation, as requested, and was verbally advised by the staff judge advocate that he found no legal error and that no corrective action was required. This affidavit convinces us that any written addendum would have reflected the verbal advice provided the convening authority and that the convening authority s action would not have differed from the one taken. Accordingly, even though the staff judge advocate erred by not responding in writing to the allegation of legal error, that error was not prejudicial and does not require returning the record for a new action. Appellant s assignment is rejected for this reason.

**Appropriateness of an Unsuspended Dismissal From The Coast Guard**

Appellant contends that a dismissal from the Coast Guard, when considered in conjunction with the remainder of the approved sentence of fifteen months confinement, forfeiture of $1,722 per month for twenty-seven months, and a fine of $4,500, is inappropriately severe. Appellant submits that the five generally recognized purposes of court-martial sentences-protection of society from the offender, punishment of the offender, rehabilitation of the offender, preservation of good order and discipline, and deterrence of the offender and others-are well served by the other elements of the sentence and that a dismissal increases Appellant s punishment beyond what is necessary to avenge society s interests. Furthermore, Appellant points out that when these offenses were committed he was undergoing a great deal of stress in his personal life resulting in depression for which he will require long term, if not lifetime, treatment. In fact, he says that he had been recommended for temporary disability retirement as 30% disabled due to major depression before his court-martial. For these reasons, Appellant asks that we set aside the dismissal when acting on the sentence.

The Government acknowledges that Appellant s sentence contains significant elements of confinement, forfeiture of pay, and a fine, but counters that these sentence elements, along with a dismissal, are what Appellant deserves. Citing *U.S. v. Snelling*, 14 M.J. 267 (CMA 1982), the Government says that, "[g]enerally, sentence appropriateness should be judged by individualized consideration of the particular accused on the basis of the nature and seriousness of the offense and the character of the offender."

Government Answer at p. 20. We have made that individualized determination and, after weighing all aspects of this case, we are convinced that, considering all of the circumstances, a dismissal is not appropriate in this case and should be set aside.

## Conclusion

In light of the foregoing, and after review of the record in accordance with Article 66, UCMJ, that portion of specification 6 of Charge II that finds Appellant guilty of theft of parts for a Ruger rifle is set aside and dismissed. The finding of guilty of the remainder of specification 6 of Charge II, as well as the findings of guilty of all other specifications and charges are affirmed. We have reassessed the sentence in light of the modification to specification 6 of Charge II and are convinced that the military judge would have imposed the same sentence even if that modification had been made at trial. In fulfilling our Article 66, UCMJ, responsibilities, we have determined that a dismissal in this case should not be approved. Accordingly, the dismissal is set aside. The remainder of the sentence, as approved below, is affirmed.

Judges KANTOR and WESTON concur.

For the Court

//s//

Brian A. Johnson
Clerk of the Court