# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS
## Washington, D.C.

### UNITED STATES

v.

### Kenya BERNARD
### Yeoman Second Class (E-5), U.S. Coast Guard

### CGCMG 0262

### Docket No. 1328

### 21 December 2010

General Court-Martial convened by Commander, Maintenance and Logistics Command Atlantic. Tried at Norfolk, Virginia, on 22 September, 13 November, and 4, 16-19 December 2008; post-trial Article 39(a) sessions on 16 March and 6 April 2009.

| | |
|---|---|
| Military Judge: | CAPT David L. Bailey, JAGC. USN |
| Trial Counsel: | LT Kelly C. Blackburn, USCGR |
| Assistant Trial Counsel: | LCDR Janine E. Donovan, USCG |
| Defense Counsel: | LT Paul D. Jenkins, JAGC, USN |
| Assistant Defense Counsel: | LT Maryann M. Bridges, JAGC, USN |
| Appellate Defense Counsel: | CPT Michael D. Berry, USMC |
| Appellate Government Counsel: | LCDR Douglas K. Daniels, USCG |
| | LCDR Marcus A. Mitchell, USCG |

### BEFORE
### McCLELLAND, TOUSLEY & McGUIRE
Appellate Military Judges

McCLELLAND, Chief Judge:

Appellant was tried by general court-martial composed of officer and enlisted members. Contrary to his pleas, Appellant was convicted of two specifications of wrongful sexual contact, in violation of Article 120, Uniform Code of Military Justice (UCMJ); one specification of assault, in violation of Article 128, UCMJ; and one specification each of indecent assault and indecent language, in violation of Article 134, UCMJ. The court sentenced Appellant to restriction for two months, reduction to E-3, and a bad-conduct discharge. The Convening Authority approved the sentence except for the restriction.

Before this court, Appellant has assigned the following errors:

I.    A new trial is warranted because YNC L, an empanelled member at Appellant's court-martial, failed to disclose a material fact during *voir dire* that would have provided a basis for a challenge for cause.

II.   Specifications 1 and 3 of Charge II fail to state an offense because they do not allege, either expressly or by implication, the terminal element of Article 134, UCMJ.

III.  The language Appellant used when speaking to YN2 JC is legally and factually insufficient to support a conviction for communicating indecent language.

IV.   Appellant's hugging of YN2 JC is legally and factually insufficient to support a conviction for wrongful sexual contact under Article 120(m), UCMJ.

V.    Appellant's right to due process was violated when 272 days of delay followed the announcement of the sentence until the Convening Authority acted.

VI.   Relief is warranted under Article 66(c), UCMJ, for post-trial delay where 272 days elapsed from trial until the Convening Authority acted.

We reject the fourth issue summarily and discuss the others.  We find no error and affirm.


**Facts**

Appellant was convicted of an unwanted kiss in June 2004, a more serious sexual assault in September 2004, and two wrongful sexual contacts, one accompanied by communication of indecent language, in October 2007.  The three victims were female Coast Guard petty officers. The incidents each took place either in or around the building in which he and the victim worked, or in the victim's home.


**New Trial**

Appellant asserts that Chief Yeoman L (YNC L), a member of the court-martial, failed to disclose that she had been a named victim in a sexual misconduct case, and that this would have provided a basis for a challenge for cause.  This nondisclosure, he argues, warrants a new trial. The argument renews the issue he raised by his post-trial Defense Motion for New Trial (Appellate Ex. LXXV).  The military judge denied that motion.  (Appellate Ex. LXXVII, found at Attach. A to Government's Mot. to Attach dated 5 April 2010.)

2

**United States v. Kenya BERNARD, No. 1328 (C.G.Ct.Crim.App. 2010)**

The test for determining whether a new trial is required after a court member fails to disclose information in *voir dire* has two prongs: "[A] party must first demonstrate that a juror failed to answer honestly a material question on *voir dire*, and then further show that a correct response would have provided a valid basis for a challenge for cause." *United States v. Mack*, 41 M.J. 51, 55 (C.M.A. 1994) (quoting *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984)). The military judge's ruling on a motion for a new trial is reviewed for abuse of discretion. *United States v. Humpherys*, 57 M.J. 83, 96 (C.A.A.F. 2002). We should not disturb the factual findings underlying the military judge's ruling unless they are clearly erroneous. *United States v. Dowty*, 60 M.J. 163, 171 (C.A.A.F. 2004); *United States v. Burris*, 21 M.J. 140, 144 (C.M.A. 1985).[1]

During *voir dire*, court member then-YN1 L was asked, "Have you or anyone you know ever been the victim of sexual assault?" She replied affirmatively as to a co-worker, answered a few other questions regarding the situation, and stated that after it was reported, "he was pretty much transferred," and the conduct was "pretty much just hugging, touching, … shoulder rubbing." (R. at 383-84.) She was not challenged.

After the trial, trial counsel discovered information that nonjudicial punishment had been imposed on an officer for conduct in which YN1 L and a female YN2 were named as "victims." The conduct resembled what YN1 L had described during *voir dire*, yet YN1 L had not indicated during *voir dire* that she was a victim, but only that a co-worker was a victim.

A post-trial Article 39(a) session ensued, at which by-then-YNC L was questioned concerning the officer incident and her *voir dire* responses. At that point, implicitly acknowledging that the officer incident was what she was referring to during *voir dire*, she stated, "I don't think that we saw the [officer] incident as a sexual assault case. The girl that talked to me didn't seem to be a victim." (R. at 1108.) She stated that, to her, the officer's gestures were fatherly, friendly and genuine, and not sexual at all, and that they occurred in the workplace. (R. at 1110, 1123, 1114.) Concerning the difference between herself and the YN2,

---

[1] We could review the findings of fact *de novo* under our "awesome, plenary" Article 66, UCMJ power. *See United States v. Cole*, 31 M.J. 270, 272 (C.M.A. 1990); *United States v. Roach*, 29 M.J. 33, 36 (C.M.A. 1989); *United States v. Hynes*, 49 M.J. 506, 509 (C.G.Ct.Crim.App. 1998). We are not inclined to do so in this case.

she viewed it as a matter of personal preference, that some people don't like to be touched while others don't object. (R. at 1110-11.) She also stated, "Because I didn't feel that [the officer] sexually assaulted me doesn't mean that [the YN2] didn't have the right to feel he did her." (R. at 1116-17.) The military judge's findings of fact reflected the foregoing. The military judge also found that the officer's conduct toward her consisted specifically of hugging, back and neck massages, and one kiss on the cheek. (Ruling on Defense Mot. for New Trial (Ruling) at 4.) When asked if she knew she was named in a charge of fraternization against the officer, YNC L responded that she did not know she was named. (R. at 1113.) In fact, although she knew he had gone to Flag Mast, she did not know what he was charged with. (R. at 1112.)

The military judge found that YNC L had honestly answered the questions during *voir dire*, and that she did not consider herself to have been sexually assaulted.[2] (Ruling at 7.) He found that her experience with the officer was not similar to the charges against Appellant. (Ruling at 8.) Applying the *McDonough* test, he concluded as to the first prong, "The defense has not established by any standard that [YNC L] failed to answer honestly a material question during voir dire or that [she] failed to raise the issue of her prior experience with [the officer] when she should have during trial." (Ruling at 9.) He went on to conclude, as to the second prong, that there had been no showing of actual bias or implied bias, and that a challenge for cause would not have been granted at trial based on the information presented at the post-trial Article 39(a) session. (Ruling at 10-11.) Accordingly, he denied the motion for a new trial. (Ruling at 11.)

We find that the military judge's findings of fact are supported by the evidence and are not clearly erroneous.

Appellant argues that Appellant's alleged misconduct was factually similar to the officer's because both involved hugging and kissing. The hugging and kissing have little meaning without the surrounding circumstances; similarity cannot be judged purely on those words in a vacuum. Given the surrounding circumstances, we agree with the military judge that the two sets of misconduct were not similar.

---

[2] These are findings of fact.

Appellant also argues that when YNC L answered a *voir dire* question with the information that a co-worker had been the victim of a sexual assault, a candid and forthright answer would have included the fact that YNC L herself was also a named person with respect to that incident. We reject this argument because there is no basis for the notion that she knew she was named. She stated at the post-trial Article 39(a) session that she did not know this (R. at 1113), and the military judge found her entirely credible.[3] There is no reason to believe that YNC L failed to answer honestly or candidly and forthrightly.

Appellant's argument fails as to the first prong.[4] Therefore the military judge did not err in denying the motion for a new trial.

Appellant raises a separate ground for challenge of YNC L. As noted above, she stated at the post-trial Article 39(a) session, "Because I didn't feel that [the officer] sexually assaulted me doesn't mean that [the YN2] didn't have the right to feel he did her." (R. at 1116-17.) Appellant now argues that this statement implies YNC L was unwilling to determine that Appellant did not sexually assault his complainant given that the complainant felt she had been sexually assaulted, even if the government failed to meet its burden of proof. Putting aside the question of whether this argument can be entertained without the first prong being met, it ignores the fact that YNC L was fully rehabilitated on this point. (R. at 1130.)

### Sufficiency of Specifications under Article 134

Appellant urges us to find the specifications under Article 134, UCMJ, deficient because they do not allege the terminal element.

Appellant was convicted of Specification 1, alleging indecent assault against YN1 K, and Specification 3, alleging communication of indecent language to YN2 JC, under Charge II. Both specifications conform to the sample specifications found in the Manual for Courts-Martial

---

[3] If she had known this, she also might have known that the charge against the officer was fraternization, not sexual assault.

[4] We also believe that his argument fails as to the second prong.

(MCM), United States (2005 ed.).[5] Accordingly, they do not explicitly include either of the "terminal elements:" "to the prejudice of good order and discipline in the armed forces" or "of a nature to bring discredit upon the armed forces." The military judge instructed the court-martial that Appellant could be convicted if either of those terminal elements was proved, for each specification. (R. at 870, 873.)

Appellant argues that under *United States v. Miller*, 67 M.J. 385 (C.A.A.F. 2009) and *United States v. Jones*, 68 M.J. 465 (C.A.A.F. 2010), a "terminal element" is an essential element under Article 134 and must be alleged expressly or impliedly, but was not. *Miller* and *Jones* reversed convictions of offenses under Article 134 that were reached as putative lesser included offenses under enumerated articles of the UCMJ, rejecting prior case law holding that the terminal elements were implied in the enumerated articles (*Miller*) and also rejecting as authoritative the listing of lesser included offenses in the MCM (*Jones*).

Appellant correctly states that a specification states an offense if it alleges, either expressly or by necessary implication, every element of the charged offense. *United States v. Sell*, 3 USCMA 202, 11 C.M.R. 202, 206 (1953); Rule for Courts-Martial (R.C.M.) 307(c)(3), MCM[6]. As Appellant acknowledges, both the 2005 edition and the 2008 edition of the MCM state, at Part IV ¶ 60c(6)(a), "A specification alleging a violation of Article 134 need not expressly allege" a terminal element. The Court of Military Appeals, in *United States v. Mayo*, 12 M.J. 286, 293 (C.M.A. 1982), noted that the same provision was contained in the Manual for Courts-Martial, United States, 1969, ¶ 213a; identified its provenance in *United States v. Marker*, 1 USCMA 393, 3 C.M.R. 127 (1952), and *United States v. Herndon*, 1 USCMA 461, 4 C.M.R. 53 (1952); and affirmed the continuing validity of the provision.

The terminal element has always been an essential element under Article 134; *Miller* and *Jones* did not make it so. *See, e.g.*, *United States v. Williams*, 8 USCMA 325, 24 C.M.R. 135, 137 (1957). The effect of *Mayo* and MCM Part IV ¶ 60c(6)(a) is to affirm that the terminal element is considered to be necessarily implied in a typical specification under Article 134. We

---

[5] The sample specification for communicating indecent language is the same in the 2005 and 2008 editions of the MCM.

[6] This provision reads the same in the 2005 and 2008 editions.

see nothing in *Martin* or *Jones* that negates the foregoing. The Court of Appeals for the Armed Forces may change the landscape in the future, but we are not inclined to attempt or suggest such a change.

In this case, we believe the allegations of Appellant's indecent assault against a Coast Guard petty officer and his communication of indecent language to a Coast Guard petty officer certainly imply prejudice to good order and discipline in the Coast Guard. We reject the assignment of error.[7]

### Sufficiency of Indecent Language Evidence

Appellant urges us to disapprove his conviction of Specification 3 under Charge II because the language alleged and proved is legally and factually insufficient to support a conviction.

Appellant was convicted of communicating indecent language to YN2 JC based on evidence of the following communication: "[Y]ou know how I've always had a mental block when it comes to white women. I'm thinking that if anybody can break me of that mental block, it would be you." (R. at 548.) He was also convicted of wrongful sexual contact with YN2 JC, based on an unwanted hug immediately following the communication.

The incident occurred when Appellant came to YN2 JC's residence early on a weekday morning, pursuant to a prior agreement that he would ride with her to work. As testified by YN2 JC, he arrived fifteen minutes early. She was not yet dressed, but when she heard a knock on the door, she assumed it was Appellant, and she opened the door to him although she was only wearing a thick towel, which covered her from four inches below her shoulder line to halfway between her waist and her knees. She invited him to have a seat in the living room and watch TV, and she retired to her bedroom to dress. (R. at 544-46.)

After YN2 JC was dressed, she went into the bathroom to put on makeup. At this point, Appellant came into the hall near the bathroom and began making small talk, followed shortly by

---

[7] The Navy-Marine Corps Court of Criminal Appeals reached the same result in *United States v. Fosler*, __ M.J. __ (N.M.Ct.Crim.App. 28 October 2010).

the statements, "You know, my body is trembling right now. I can't get the image of you in your towel out of my head. And you know how male hormones are raging in the morning." She told him that what he had just said made her uncomfortable and that it was a conversation she "was not wanting to have." He answered, "I understand, but you know how I've always had a mental block when it comes to white women. I'm thinking that if anybody can break me of that mental block, it would be you." He then came into the bathroom, took her makeup applicator out of her hand and set it on the counter. She said, "What are you doing?" He answered, "Shhhh, just trust me." Then he put his arms around her and hugged her, with his chest contacting her breasts and his face on her neck. She could feel him trembling, he was sweating, and his voice was trembling. She told him he needed to let her finish getting ready for work, she got her arm between them and put her hand on his chest, and he backed out of the bathroom. (R. at 547-51.)

"Indecent language is that which is grossly offensive to modesty, decency, or propriety, or shocks the moral sense, because of its vulgar, filthy, or disgusting nature, or its tendency to incite lustful thought. Language is indecent if it tends reasonably to corrupt morals or incite libidinous thoughts. The language must violate community standards." MCM, Part IV, ¶ 89c. Words suggesting heterosexual intercourse between consenting adults are not intrinsically indecent, nor are words suggesting sexual intercourse that would be adulterous. *United States v. Coleman*, 48 M.J. 420, 423 (C.A.A.F. 1998). An utterance charged as indecent language must be evaluated in the context in which it was made. *United States v. Green*, 68 M.J. 266, 270 (C.A.A.F. 2010).

It is true that the language in the specification, by itself, is not indecent. However, given the surrounding circumstances – where the communication was preceded by Appellant's statement about his thoughts and physical state, and in light of his confirming actions immediately afterward – we find the evidence both legally and factually sufficient to support the conviction.

In the event that we are wrong in upholding the conviction of the specification, we are certain the sentence would have been the same without that specification.

**Post-trial delay**

Appellant urges us to disapprove the bad conduct discharge, on account of post-trial delay amounting to a violation of due process, or at least unreasonable post-trial delay warranting exercise of our power under Article 66, UCMJ.

The original sentence was restriction for two months, reduction to E-3, and a bad-conduct discharge. The Convening Authority approved the sentence except for the restriction.

Processing of the record of trial (record or ROT) took place according to the following chronology. This chronology is taken from the trial transcript, the memorandum dated 7 October 2009 forwarding the record to Coast Guard Headquarters (CGHQ)[8], and the ancillary documents attached to the record.

| Date | Action | Days elapsed |
|------|--------|--------------|
| 19 Dec 08 | Sentence adjudged | 0 |
| 06 Feb 09 | ROT received by trial counsel (TC) from transcriptionist | 49 |
| 19 Feb 09 | R.C.M. 802 conference on need for Article 39(a) session | 62 |
| 24 Feb 09 | Initial ROT sent to military judge | 67 |
| 16 Mar 09 | First post-trial Article 39(a) session | 87 |
| 06 Apr 09 | Second post-trial Article 39(a) session | 108 |
| 21 May 09 | Last transcript received by TC from transcriptionist | 153 |
| 21 May 09 | Last transcript sent to military judge | 153 |
| 04 Jun 09 | Complete ROT authenticated by military judge | 167 |
| 04 Jun 09 | Authenticated ROT received by trial counsel | 167 |
| undated | Staff Judge Advocate's Recommendation (SJAR) | |
| 24 Aug 09 | SJAR sent to defense counsel | 248 |
| 17 Sep 09 | First Convening Authority action | 272 |
| 07 Oct 09 | Memorandum forwarding ROT to CGHQ | 289 |

The record was referred to this Court on 10 November 2009, fifty-four days after the first Convening Authority action.

---

[8] The Coast Guard Military Justice Manual requires an accounting for post-trial delay where more than 120 days elapsed between the date sentence was adjudged and the date of Convening Authority action. Paragraph 5.F.4 of COMDTINST M5810.1D dated 17 August 2000.

Notable periods of post-trial processing are forty-nine days taken to transcribe the 1088-page initial record, forty-six days to conduct post-trial Article 39(a) sessions after initial R.C.M. 802 discussion of the issue requiring them, forty-five days taken to transcribe the forty-four-page transcript of the second post-trial Article 39(a) session, eighty-one days taken after receipt of the authenticated record to produce the SJAR and send it to defense counsel, twenty days between Convening Authority action and sending the record to CGHQ, and thirty-four days for the record to travel to CGHQ and be referred to this Court. The memorandum forwarding the record points out that part of the delay is attributable to the post-trial Article 39(a) sessions, but otherwise gives no meaningful explanation for any delay.

Following referral to this Court, we received an additional thirty pages of ancillary documents, comprising Appellant's request for clemency dated 20 October 2009, new promulgating order and action dated 27 October 2009, and various intervening documents including SJAR addendum.

We granted a Government motion to attach an affidavit by LCDR Shanell King further explaining the post-trial processing. Concerning the request for clemency and new Convening Authority action, the affidavit explains that trial defense counsel notified the Government in October the SJAR had not been received, that this was because defense counsel's email address had changed without notice to the Government, and that the Convening Authority thereafter accepted Appellant's clemency request, withdrew the original action and issued a new action.

The Court of Appeals for the Armed Forces (CAAF) applies "a presumption of unreasonable delay that will serve to trigger the *Barker* four-factor analysis where the action of the convening authority is not taken within 120 days of the completion of trial [and] where the record of trial is not docketed by the service Court of Criminal Appeals within thirty days of the convening authority's action." *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006). The "*Barker* four-factor analysis" comprises consideration of the following four factors to determine whether post-trial delay constitutes a due process violation: "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice." *Moreno*, 63 M.J. at 135 (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)).

Appellant claims a due process violation, and the delays in this case are sufficient to raise the presumption. The Convening Authority's action was delayed 152 days beyond the 120-day period prescribed by *Moreno* (without counting the additional forty days to the second action). If the forty-six days taken for post-trial Article 39(a) sessions is subtracted, the total period is 226 days, 106 days beyond the 120-day Moreno standard.

The initial period, forty-nine days for transcription of 1088 pages, would not necessarily prevent compliance with the 120-day standard. The forty-six days for post-trial Article 39(a) sessions surely constitutes a justifiable, case-specific delay contemplated by CAAF in *Moreno* as reasonable. ("Some cases will present specific circumstances warranting additional time, thus making those periods reasonable upon assessment of the *Barker* factors." *Moreno*, 63 M.J. at 143.)[9]

The King affidavit explains that the period from authentication to SJAR was extended to eighty-one days as a result of several factors. First was the transfer and leave of critical personnel. Second was "Coast Guard Modernization," a restructuring that resulted in new organizational relationships. The combination of the new structure with the disqualification of the Staff Judge Advocate who should have been responsible under the new structure caused a delay while the proper acting SJA was identified. Finally, the newly involved personnel required some time to familiarize themselves with the case.

Transfers of personnel, not to mention leave, are routine matters in the military services that must be managed; accused and convicted members should not pay a price for such matters. Organizational changes are not routine, but they, too, must be managed. Still, the justified delay for the post-trial Article 39(a) sessions pushed the period when action was needed by the affected personnel into the season when both transfers and Modernization were to take place. In sum, we find the delay not wholly reasonable, but only somewhat unreasonable.

---

[9] However, the forty-five days taken to transcribe forty-four pages thereafter is not so readily called reasonable.

We conclude that as to the period before the Convening Authority's action, the first and second *Barker* factors, length and reasons for delay, weigh somewhat against the Government.

What about the second action by the Convening Authority, which might be viewed as representing additional delay? We see no reason to hold it against the Government. In any event, the new action did not change Appellant's approved sentence and the additional time had no impact on him that we can discern. It does not appear to have affected the date of referral to this Court.

Referral to this Court was delayed twenty-four days beyond the thirty-day period prescribed by *Moreno* (counting from the first action). The period between the convening authority's action and commencement of appellate review is relatively insignificant. No reason was given for this delay. As to this period, the first and second *Barker* factors weigh slightly against the Government.

Appellant did not assert the right to timely review before the Convening Authority. The third *Barker* factor does not weigh against the Government.

As to the fourth *Barker* factor, Appellant does not claim any prejudice. This factor does not weigh against the Government.

Although "no single factor [is] required to find that post-trial delay constitutes a due process violation," *Moreno*, 63 M.J. at 136, in the absence of prejudice the other factors must be very weighty against the Government to warrant a due process violation finding, the delay being "so egregious that tolerating it would adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 361-62 (C.A.A.F. 2006). The convening authority's action in *Toohey* took place 644 days after the date of sentence, and the Court of Criminal Appeals issued its decision 2240 days (more than six years) after the date of sentence. By contrast, the delay in our case is not egregious. In the absence of prejudice, we find no due process violation.

We turn now to Appellant's argument that we should grant sentence relief under *United States v. Tardif*, 57 M.J. 219 (C.A.A.F. 2002), which held that we may grant relief for excessive post-trial delay without a showing of prejudice. *Id.* at 224. Upon finding unreasonable and unexplained post-trial delay, this Court may consider such delay, along with all the other facts and circumstances, in exercising its responsibilities under Article 66(c), UCMJ. *Id.* We have granted such relief in several cases, most recently in *United States v. Medina*, 69 M.J. 637 (C.G.Ct.Crim.App. 2010), and before that in *United States v. Greene*, 64 M.J. 625 (C.G.Ct.Crim.App. 2007).

The reasons for the overall delay in this case convince us that the delay was not excessive, that is, not so unreasonable as to call for sentence relief. No relief is granted.

## Error in Promulgating Order

We note that the Promulgating Order, dated 27 October 2009, shows Appellant's conviction for wrongful sexual contact as having been charged under Article 128 instead of Article 120. We see no prejudice from this error, but the promulgating order must be corrected.

## Decision

We have reviewed the record in accordance with Article 66, UCMJ. Upon such review, the findings and sentence are determined to be correct in law and fact and, on the basis of the entire record, should be approved. Accordingly, the findings of guilty and the sentence, as approved below, are affirmed. The record of trial shall be returned to the Convening Authority, who shall issue a new promulgating order free of errors.

Judges TOUSLEY & McGUIRE concur.



For the Court,

John T. Ure
Deputy Clerk of the Court